OPINION OF THE COURT
Edward J. Greenfield, J.
This case having been settled on the eve of trial, plaintiffs *926 attorney has made application to this court to approve additional compensation of 50% of the recovery, instead of the normal one-third contingency fee, for the "angst, aggravation and life’s blood which this case caused.”
The attorney’s application for additional compensation was supported by the client. He stated that while a one-third contingency retainer was initially agreed upon, as the trial approached he had agreed to increase the attorneys’ contingent compensation to 50%. The client’s supporting affidavit spoke in glowing terms of the dedication and devotion of his attorneys, as well as the hardship and risks undertaken by them in order to confer the benefit upon him of an enhanced settlement. The client’s affidavit could not have been more supportive of the application for additional fees and more lavish in praise of the attorneys’ efforts if the attorneys themselves had drafted it.
However, after the attorneys had submitted the formal application for the additional fees, the plaintiff, in a letter to the court, stated that despite his prior supporting affidavit, he in fact objected to the increased compensation requested by his attorneys, and had agreed to the higher fee only under duress and upon his attorneys’ threats to withdraw from the action before trial. In view of the inestimable benefits the attorney claims to have achieved for his client, he charges his client is a "paradigm of ingratitude.” Well might he mutter, as did King Lear, "Ingratitude, thou marble-hearted fiend!”
The client further states that these threats occurred at a time he was "emotionally brutalized” from the lawsuit, "close to being financially destitute”, and incapable of dealing with the prospect of securing new counsel. This allegedly led plaintiff to agree to the increased compensation sought by his attorneys. Further, plaintiff alleges that he signed the affidavit in support of the request by his attorneys for increased compensation after the case was settled only because he was afraid that if he did not do so it would jeopardize the settlement reached with defendants.
The whole point and purpose of the rules fixing contingent fees in personal injury actions is to prevent attorneys from exacting unconscionable fees even though there appears to be agreement by the client. The lawyer has "no inalienable right to impose on his client”. (Gair v Peck, 6 NY2d 97, 106 [1959], cert denied 361 US 374.) The duty and function of the courts "to keep the house of the law in order does not hinge upon *927 whether clients, worn down by injuries, delay, financial need and counsel holding the purse strings of settlement, knowing little about law or lawyers, have the stamina to resist” (supra, at 111). At the time that landmark case was decided more than 60% of the filed contingent fee agreements called for attorneys’ compensation of 50% of the recovery. It was in recognition of the possibility that clients might readily agree to fee arrangements which courts considered unconscionable, and to prevent the attorney from making himself the equal partner of the injured party that the Appellate Division undertook to regulate the amounts which could be charged. Gair v Peck (supra) upheld the legality of the contingent fee schedule promulgated by the Appellate Division to deal with "the ingenuity of lawyers who are trying to sail too close to the wind.” (Supra, at 115.)
The contingent fee rules which govern attorneys in actions involving personal injury, no matter what the agreement between the attorney and client may be, are now embodied in 22 NYCRR 603.7 (e). Subdivision (e) (1) provides that fees in excess of those contained in the schedule of fees adopted by the First Department "shall constitute the exaction of unreasonable and unconscionable compensation”, unless they have been authorized by a written order of the court. Subdivision (e) (2) then sets forth the schedule of presumptively reasonable fees.
Two alternatives are presented. Under schedule A, a sliding scale of permissible recovery is set running from 50% of the first $1,000 to 25% of sums over $25,000. Alternatively, the compensation may be fixed pursuant to schedule B, which calls for a flat percentage not exceeding 33\6% of the sum recovered.
In this action, the original retainer agreement did provide for charges in excess of the permitted contingency fees because it called for a contingent fee of 3316% of the gross proceeds "or whatever the Firm’s straight time billing charges would have been, whichever is greater. ” (Emphasis supplied.)
Thus, the agreement in this case on its face calls for compensation possibly greater than the permissible limit. "While, in the law generally, equivocal contracts will be construed against the drafters, courts as a matter of public policy give particular scrutiny to fee arrangements between attorneys and clients, casting the burden on attorneys who have drafted the retainer agreements to show that the con *928 tracts are fair, reasonable, and fully known and understood by their clients”. (Shaw v Manufacturers Hanover Trust Co., 68 NY2d 172, 176 [1986].) An attorney may handle a case on the basis of a flat retainer, on the basis of charges for time incurred, or on a contingency. If there is a contingency agreement, the attorney cannot exceed the permitted percentages by providing for alternatives which would result in even higher compensation. The contingent fee is permitted because the attorney takes the risk of recovering nothing at all. If the agreement provides for the certainty of recovery in any event, the risk which justifies the contingency fee is removed, especially if there can be a recovery on a time billing basis should that turn out to be more remunerative.
The attorney here claims that on the basis of straight time charges, including over 50 hours for the preparation of an assault complaint fsic!), the value of the firm’s services was well above what a one-third contingent fee would permit. But an attorney cannot have it both ways. If he fixes a one-third contingent retainer, his ultimate fee is tied in with the client’s recovery, for better or for worse. He takes the risk of a loss if the ultimate recovery is too low, but he may have a windfall if the recovery is much greater. The essence of a contingent fee is risk — shared risk. Sometimes the attorney wins, sometimes he loses, sometimes he breaks even.
The contingent fee schedules have recognized the possibility that adequate compensation may not be achieved because of extraordinary circumstances. Only in those cases is application to be made to the court to fix reasonable compensation in an amount greater than that provided for in the fee schedules. It is to be noted, however, that such an application can be made only if the fees were fixed in the first instance under the sliding scale of schedule A, which calls for a 25% ceiling. When the contingent fee is a flat 3316% pursuant to schedule B, the rule expressly provides that the procedure "for making application for additional compensation because of extraordinary circumstances shall not apply.”
Pursuant to these rules, the court will treat any provision of the agreement which calls for compensation greater than 3316% a nullity, and whether the client in fact agreed or *929 disagreed to additional fees, and no matter how sterling the representation may have been to the time of trial, the court concludes that there is no authority for the award of additional compensation. The application of the attorneys is therefore denied.