■ SHELTON STEWART, Respondent, v NEW YORK CITY TRANSIT AUTHORITY, Appellant. [918 NYS2d 81]—

The notice of claim included sufficient information to allow defendant to investigate the claim (*see Brown v City of New York*, 95 NY2d 389, 393 [2000]). It advised defendant of the place and approximate time of the accident, and stated that the nature of the claim involved steps which were "slippery, dirty

and greasy." Further, the claim stated that defendant and its employees were negligent in their maintenance and inspection of the stairways, that the stairways were not in a reasonably safe condition, and that defendant knew or should have known of the condition. Nor did plaintiff change his theory of liability from that set forth in the notice of claim. The theory of liability always was and remained negligence (*see Goodwin v New York City Hous. Auth.*, 42 AD3d 63, 67 [2007]).

There was nothing manifestly untrue or incredible about plaintiff's testimony that he often observed pigeon droppings on the subway stairs that he used every day and that he was caused to slip because of the presence of pigeon droppings on the very same set of stairs. Indeed, the station cleaner similarly testified that he had "experience on a daily basis with pigeon [droppings] and having to clean it from these steps," and that he was taught to put sand over the pigeon droppings because they were slippery.

At trial, plaintiff testified that he always saw pigeon excrement all over the station, that he often saw it on the stairs where he fell, that he had complained repeatedly to station workers, that he saw it 14 hours before the accident, and that he saw it again at the time of the accident. The station cleaner agreed that pigeons often left their droppings throughout the station, and while he denied seeing accumulations of droppings on the steps, he also stated that he had experience cleaning the droppings on a daily basis from the steps. He also testified that part of his duties included cleaning the steps of the droppings, and while he denied that the droppings were slippery, he also stated that he was trained to put sand over the droppings because they were slippery, and to then clean them off the steps. In addition, he maintained that he did not work on the day of the accident and thus could not dispute plaintiff's account of the condition of the steps on that day.

There was sufficient evidence from which the jury could infer that defendant had actual knowledge that pigeons regularly left their droppings on the stairway which were regularly permitted to remain for an unreasonable period of time. The jury was therefore entitled to charge defendant with constructive knowledge of each reoccurrence of the hazardous condition (*see Alvarez v Mendik Realty Plaza*, 176 AD2d 557, 558 [1991], *lv denied* 79 NY2d 756 [1992]). The jury also reasonably credited plaintiff's claim that he slipped on bird droppings. Notably, there was no evidence to the contrary, such as evidence that the steps had been cleaned of droppings shortly before the accident, and the jury was free to find plaintiff credible. Accordingly,

there was a valid line of reasoning and permissible inferences which could lead rational people to the conclusion reached by the jury on the basis of the evidence presented at trial (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]).

In view of the Transit Authority's failure to act diligently to procure its proposed witness, the trial court's preclusion of the Transit Authority from calling such witness did not rise to the level of an abuse of discretion (*see Rosa v New York City Tr. Auth.*, 55 AD3d 344 [2008]). Similarly, we find that the preclusion of certain accident reports was not an abuse of discretion as the Transit Authority claimed for years that it had no such reports. In any event, even assuming there was error, we find the error harmless.

The trial court did not commit error when it restricted the use of plaintiff's pre-existing conditions to the issue of damages. Indeed, as the trial court remarked, there was no evidence that plaintiff was unable to walk up and down the steps on the day of the accident, and it would have been overly prejudicial to permit the jury to speculate that plaintiff fell because of his prior condition (*see Kaminer v John Hancock Mut. Ins. Co.*, 199 AD2d 53 [1993]). While the court should have charged PJI 2:47 to the jury (*see Sherman v City of New York*, 206 AD2d 272, 275 [1994], *lv denied* 85 NY2d 802 [1995]), the court did give the jury a comparative negligence charge and advised it that negligence is the failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. Following that charge, the jury found plaintiff 20% at fault for the accident. Accordingly, any error in refusing to charge PJI 2:47 was harmless (*see e.g. Askin v City of New York*, 56 AD3d 394 [2008], *lv dismissed* 12 NY3d 769 [2009]).

The evidence at trial demonstrated that plaintiff sustained a contusion of the cervical spine and required a laminectomy and fusion of vertebrae, with insertion of metal plates and screws. Plaintiff also suffered compression fractures of his thoracic spine, and later required a lumbar laminectomy with fusion and insertion of metal screws and struts. This was followed by extensive physical therapy and rehabilitation at the hospital. Thereafter, plaintiff required a baclofen pump to be surgically implanted to pump medication to his legs on a continuous basis so as to prevent muscle spasm. Plaintiff can no longer work due to his injuries, has difficulty sitting, standing, walking, bending, dressing himself, and sleeping. He also reported constant pain in his lower back, which radiates down both legs.

Plaintiff's injuries are serious and permanent. We find that the jury's awards for past and future pain and suffering, cover-

ing 29 years and three months, does not deviate materially from what would be reasonable compensation.

As plaintiff concedes, the jury award of $1.3 million for future medical expenses was not supported by the evidence. Accordingly, we reduce the award as indicated.

The jury's award of $400,000 for past loss of earnings was speculative as to what plaintiff might have earned in overtime pay (*see Lipshultz v K & G Indus., Inc.*, 18 AD3d 515 [2005]). Accordingly, we reduce that award to the amount requested, which was supported by the evidence.

There was no basis for the jury to conclude that plaintiff would work for the remainder of his life. Indeed, a work-life expectancy of 7.5 years is much more realistic based on the statistical averages. Further, given the extensive evidence regarding plaintiff's pre-existing conditions, the jury's determination that plaintiff would work another 20 years was against the weight of the evidence (*see Lopiano v Baldwin Transp.*, 248 AD2d 161 [1998], *lv dismissed* 92 NY2d 876 [1998]; *Khulaqi v Sea-Land Servs.*, 185 AD2d 973 [1992]). Accordingly, the award for future loss of wages is reduced as indicated.

Defendant may seek relief before the trial court with regard to collateral source setoffs (*see* CPLR 4545 [a]).

We have considered defendant's remaining contentions and find them unavailing. Concur—Mazzarelli, J.P., Acosta, De-Grasse, Richter and Manzanet-Daniels, JJ.