[11 NE3d 1104, 989 NYS2d 1]

LORI ALBUNIO et al., Appellants, v CITY OF NEW YORK et al., Defendants. MARY D. DORMAN, Nonparty Respondent.

Argued February 18, 2014; decided April 3, 2014

66

## POINTS OF COUNSEL

*Law Office of Leon Friedman,* New York City (*Leon Friedman* of counsel), for appellants. I. In interpreting state civil rights laws providing for the award of attorneys' fees, state courts are obliged to follow federal precedents interpreting federal civil rights laws containing language similar to the state laws. (*McGrath v Toys "R" Us, Inc.,* 3 NY3d 421; *Fornuto v Nisi,* 84 AD3d 617; *Jiggetts v Dowling,* 3 AD3d 326; *Matter of Diaz v Franco,* 257 AD2d 449.) II. Attorneys are not entitled to both statutory fees and any contingency award unless the retainer agreement signed by the client specifically provides for such an award. (*Quint v A.E. Staley Mfg. Co.,* 245 F Supp 2d 162; *Pickett v Sheridan Health Care Ctr.,* 664 F3d 632; *Venegas v Mitchell,* 495 US 82; *Blanchard v Bergeron,* 489 US 87; *Sullivan v Crown Paper Bd. Co., Inc.,* 719 F2d 667; *Daly v Hill,* 790 F2d 1071; *Lenard v Argento,* 699 F2d 874; *Ross v Douglas County, Neb.,* 244 F3d 620; *Hamilton v Ford Motor Co.,* 636 F2d 745; *Griffin v Washington Convention Ctr.,* 172 F Supp 2d 193.) III. Federal courts have consistently rejected any effort to add the amount of statutory fees to any final judgment in order to determine the appropriate contingency fee unless the retainer agreement contains explicit language to that effect; that result is required under New York law as well. (*Montgomery v Noga,* 168 F3d 1282; *Velarde v PACE Membership Warehouse, Inc.,* 105 F3d 1313; *Bates v Kuguenko,* 100 F3d 961; *Lowe v Pate*

*Stevedoring Co.*, 595 F2d 256; *Ross v Douglas County, Neb.*, 244 F3d 620; *Riverside v Rivera*, 477 US 561; *Elusta v City of Chicago*, 696 F3d 690; *Budinich v Becton Dickinson & Co.*, 486 US 196; *Federal Ins. Co. v International Bus. Machs. Corp.*, 18 NY3d 642; *Morgan v Greater N.Y. Taxpayers Mut. Ins. Assn.*, 305 NY 243.) IV. The contingency amount must be further reduced by the amount of statutory fees awarded to Mary D. Dorman for appellate work. (*Suzuki v Yuen*, 678 F2d 761; *Quaratino v Tiffany & Co.*, 166 F3d 422; *Hetzel v County of Prince William*, 188 F3d 502.)

*Law Office of Paul O'Dwyer*, New York City (*Paul J. O'Dwyer* of counsel), for nonparty respondent. I. Construction of a retainer agreement is a matter of state and not federal law. (*McGrath v Toys "R" Us, Inc.*, 3 NY3d 421; *King v Fox*, 7 NY3d 181, 418 F3d 121; *Zakrzewska v New School*, 14 NY3d 469; *Fornuto v Nisi*, 84 AD3d 617; *Jiggetts v Dowling*, 3 AD3d 326; *Matter of Diaz v Franco*, 257 AD2d 449; *Williams v New York City Hous. Auth.*, 61 AD3d 62, 13 NY3d 702; *Uy v Bronx Mun. Hosp. Ctr.*, 182 F3d 152; *Alderman v Pan Am World Airways*, 169 F3d 99; *Gair v Peck*, 6 NY2d 97.) II. Plaintiffs are seeking an impermissible advisory opinion from this Court. (*New York Pub. Interest Research Group v Carey*, 42 NY2d 527; *Cuomo v Long Is. Light. Co.*, 71 NY2d 349; *T.D. v New York State Off. of Mental Health*, 91 NY2d 860.) III. The Appellate Division correctly enforced the language of the retainer agreements. (*King v Fox*, 7 NY3d 181; *Lawrence v Graubard Miller*, 11 NY3d 588; *Jacobson v Sassower*, 66 NY2d 991; *Seligson, Morris & Neuburger v Fairbanks Whitney Corp.*, 22 AD2d 625; *Matter of Koeppel*, 95 AD3d 453; *Matter of Bizar & Martin v U.S. Ice Cream Corp.*, 228 AD2d 588; *Wolfgang v Hampton Hill Villas Condominium Bd. of Mgrs.*, 30 AD3d 1057.) IV. The Appellate Division correctly refused to set aside the retainer agreements for the work done on appeal. (*King v Fox*, 7 NY3d 181.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

This appeal concerns the appropriate treatment of statutory counsel fees awarded under the New York City Human Rights Law where the contingency fee agreement does not explicitly mention statutory fees. We hold that, absent a contract term expressly providing for a different distribution, an attorney is entitled to the greater of either the contingency fee or the statutory award.

In March 2005, appellants, former NYPD Captain Lori Albunio and former NYPD Lieutenant Thomas Connors retained nonparty respondent Mary Dorman to represent them in a lawsuit against, among others, the City of New York and the NYPD, alleging violations of the New York City Human Rights Law (NYCHRL) (Administrative Code of City of NY § 8-107 [7]). Over the course of the litigation, Dorman and her clients entered into three separate retainer agreements pertaining, respectively, to Dorman's work on the trial (hereinafter, the Trial Agreement), on the appeal to the Appellate Division, and on the appeal to this Court (hereinafter, collectively, the Appellate Agreements).

The Trial Agreement provided that Dorman would receive a contingency fee equal to 33⅓ "percent of the sum recovered, whether recovered by suit, settlement or otherwise." The contract went on to explain that "[s]uch percentage shall be computed on the net sum recovered after deducting taxable costs and disbursements," and that, but for certain enumerated items, "there shall be no deduction in computing such percentages." Under the fee provision of the NYCHRL, a court may, in its discretion, award reasonable counsel fees to the prevailing party in certain civil rights actions (Administrative Code of City of NY § 8-502 [f]). Nonetheless, the Trial Agreement did not expressly address the potential for statutory counsel fees or the method by which the contingency fee would be calculated in the event that the court awarded fees under the statute.

Unlike the Trial Agreement, the Appellate Agreements explicitly dealt with the distribution of statutory fees that could be awarded in conjunction with the appeals. Specifically, each Appellate Agreement provided that,

> "[i]n the event Mary D. Dorman is entitled to fees as a result of the outcome of the Appeal, she may apply to the Court for such fees and will be entitled to them in their entirety. In the event [Dorman] is successful in the appeal in whole or in part, but that no fees are awarded by the Court for work done on the appeal, or the fees awarded are less than $20,000, [the client] agrees to pay [Dorman] the sum of $20,000 in consideration of such work or the difference between the fees awarded and $20,000. Successful, in whole or in part shall be for anything less than dismissal of the action."

A jury ruled in appellants' favor and awarded them $986,671 in damages[1] (see Sorrenti v City of New York, 17 Misc 3d 1102[A], 2007 NY Slip Op 51796[U] [Sup Ct, NY County, Aug. 16, 2007]). While the appeal was still pending, Dorman made an application in Supreme Court seeking statutory compensation for her trial work, and she was awarded $296,826.04,[2] payable by defendants.[3] The verdict and trial fee awards were upheld on appeal (see Albunio v City of New York, 67 AD3d 407 [1st Dept 2009], affd 16 NY3d 472 [2011]).

Thereafter, Dorman also requested fees for her appellate work, and Supreme Court awarded her $233,965.93.[4] The combined total of attorneys' fees awarded for trial and appellate work was therefore just over $530,000.

After a monetary dispute arose between Dorman and her clients, Dorman commenced the instant proceeding, seeking a declaratory judgment to enforce the three retainer agreements. Dorman claimed that her one-third contingency fee should be calculated based on the total value of the statutory counsel fees for trial work plus the jury award. She argued that the Trial Agreement's reference to the "sum recovered" should be broadly construed to encompass statutory fees as well as the damage award. Under the Appellate Agreements, Dorman contended that she was additionally entitled to either $20,000 per client, per appeal, or the statutory award, should it exceed that amount. She also asserted that any appellate statutory fees should not offset the contingency fee owed to her for trial work.

Insofar as relevant to this appeal, Supreme Court granted Dorman's motion, and the Appellate Division affirmed (101 AD3d 656 [1st Dept 2012]). The courts below determined that the Trial and Appellate Agreements were clear and unambiguous,

---

1. The jury awarded $479,473 to Albunio and $507,198 to Connors (Sorrenti v City of New York, 17 Misc 3d 1102[A], 2007 NY Slip Op 51796[U], *2 [Sup Ct, NY County, Aug. 16, 2007]). These amounts do not reflect accrued interest.

2. For simplicity's sake, references herein to statutory fee awards include both fees and disbursements and reflect interest only to the extent that already-accrued interest was included in the fee award at the time of judgment.

3. Albunio v City of New York, 2012 NY Slip Op 33566(U) (Sup Ct, NY County, May 1, 2012, Shulman, J.).

4. (Albunio v City of New York, 35 Misc 3d 1238[A], 2012 NY Slip Op 51037[U], *5-6 [Sup Ct, NY County, June 6, 2012]). This amount reflects Dorman's share after subtracting the $36,820 awarded to cocounsel on the appeal to this Court.

adopting Dorman's interpretation of the fee calculation. We granted leave to appeal (21 NY3d 852 [2013]), and now modify the Appellate Division order with regard to the Trial Agreement.

The terms of the Trial Agreement do not unambiguously provide that any statutory fees are part of the "sum recovered" and therefore subject to the one-third contingency fee. The subsequent phrase, "by suit, settlement *or otherwise*" (emphasis added), might support an interpretation that "sum recovered" is broad enough to encompass a statutory award. However, in ordinary parlance, a plaintiff's "recovery" denotes the amount payable by the defendant as compensation for the plaintiff's injury, that is, the damages award or settlement. Moreover, the Trial Agreement does not so much as mention the possibility of statutorily awarded fees, the existence of which the average client is presumably unaware. The general rule that "equivocal contracts will be construed against the drafters" is subject to particularly rigorous enforcement in the context of attorney-client retainer agreements (*Shaw v Manufacturers Hanover Trust Co.*, 68 NY2d 172, 176 [1986]; *see also Matter of Cooperman*, 83 NY2d 465, 472 [1994] [noting that "attorney-client fee agreements are a matter of special concern to the courts and are enforceable and affected by lofty principles different from those applicable to commonplace commercial contracts"]). Indeed, "[t]he importance of an attorney's clear agreement with a client as to the essential terms of representation cannot be overstated. The client should be fully informed of all relevant facts and the basis of the fee charges, especially in contingent fee arrangements" (*Shaw*, 68 NY2d at 176; *accord King v Fox*, 7 NY3d 181, 191 [2006]; *Jacobson v Sassower*, 66 NY2d 991, 993 [1985]). Accordingly, as a matter of public policy, courts "cast[ ] the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and understood by their clients" (*Shaw*, 68 NY2d at 176, citing, inter alia, *Jacobson*, 66 NY2d at 993; *Gair v Peck*, 6 NY2d 97, 106 [1959], *cert denied* 361 US 374 [1960]).

Dorman has not met that burden with regard to the Trial Agreement. Attempting to demonstrate that appellants shared her understanding of the agreement when it was executed, Dorman relies primarily on three pieces of extrinsic evidence: her affidavit, in which she describes alleged conversations with appellants regarding the Trial Agreement; a December 2009 email from Dorman to appellants; and a contingency fee agreement

appellants entered into with their prior counsel, which did mention statutory fees. This extrinsic evidence fails to establish Dorman's position. If anything, the evidence bolsters appellants' contention that Dorman did not explain her perception of the fee arrangement until long after the jury verdict.

In her affidavit, Dorman avers that after the City appealed, she asked Albunio and Connors to execute a new retainer agreement for appellate representation. During the same conversation, Dorman says they *"first discussed* how the initial judgments . . . would be distributed," explaining that any fee award would be " 'added to the pot' as a total recovery subject to the two thirds/one-third distributions" (emphasis added). Dorman's affidavit further describes Connors expressing surprise at the proposed calculation. Dorman's own account thus belies her claim that the Trial Agreement was fully known and understood by her clients in 2005. Contrary to Dorman's position, appellants' failure to raise objections upon learning of her intended fee calculation does not establish their understanding of this arrangement upon execution of the Trial Agreement.

Nor does Dorman's email correspondence with appellants on December 2, 2009, reveal their previous awareness of Dorman's reading of the contract. Dorman stated in the email that the Trial Agreement entitled her to "one-third of what we recover" and that she would "credit the fees awarded to [her] to that third." This email hardly shows that Dorman intended to include the statutory fees in the net recovery for contingency fee purposes. A more natural reading of Dorman's message in fact coincides with her clients' view that any statutory award should offset the contingency fee. At best, the email is ambiguous.

Finally, Dorman relies on the differences between the Trial Agreement and a retainer agreement between appellants and their prior counsel. The latter contract, executed in 2003, specifically provided that counsel would receive the greater of the statutory award or 40% of the damages. Contrary to Dorman's contentions, the absence of a similar provision in the Trial Agreement does not establish that appellants understood that the "sum recovered" would encompass *both* the damages and any statutory award. Attorneys have an affirmative obligation to ensure that their clients fully comprehend the terms of a retainer agreement. Where, as here, the terms of the agreement are ambiguous, the lawyer's burden is considerable. It will rarely be satisfied by inference based on a contractual omission.

Having determined that the Trial Agreement entitles Dorman to a contingency fee equal to one third of the jury award, we turn to the question of how the statutory award of counsel fees should affect a contingency fee when the retainer agreement is effectively silent on the matter. This being an issue of first impression for this Court, appellants urge us to look to federal case law for guidance, noting that a number of federal courts have addressed the same issue in the context of analogous counsel fee provisions in federal statutes.

Clearly, the construction of attorney-client retainer agreements is the province of state, not federal, law (*see generally Gair, supra*; Judiciary Law § 474; *Alderman v Pan Am World Airways*, 169 F3d 99, 103 [2d Cir 1999] ["Federal courts apply state law when ruling on the interpretation of contractual attorney fee provisions" (quotation marks and citation omitted)]). However, the question before us implicates not only principles of contract interpretation, but also the policy considerations underlying the award of counsel fees to prevailing civil rights plaintiffs under the NYCHRL. Federal case law can provide useful guidance in this respect since "the attorney fee provision of the [NYCHRL] is similar to the fee provisions in the federal civil rights statutes" (*McGrath v Toys "R" Us, Inc.*, 3 NY3d 421, 426 [2004]).[5]

A majority of the federal cases on point follows the rule that, absent an explicit agreement to the contrary, statutory fees are not considered part of the total recovery for purposes of determining the contingency fee, and counsel is generally entitled to the greater of the two. In *Lowe v Pate Stevedoring Co.* (595 F2d 256 [5th Cir 1979]), the attorney sought a 45% lien on both the damage award and the statutory fee pursuant to a retainer agreement providing that counsel would receive 45% of "any sum 'recovered by suit' " (*id.* at 257). The Fifth Circuit held that the lawyer's compensation was limited to the statutory award, noting that the retainer agreement did not specifically provide for the recovery of a "fee on a fee" (*id.*).

5. The Court is mindful that the New York City Council's 2005 amendment to the NYCHRL was, in part, an effort to emphasize the broader remedial scope of the NYCHRL in comparison with its state and federal counterparts and, therefore, to curtail courts' reliance on case law interpreting textually analogous state and federal statutes (*see* Comm on General Welfare, Council Rep of Governmental Affairs Div [Aug. 17, 2005]). However, to the extent the 2005 amendment addressed the NYCHRL attorney fee provision, the legislative history confirms that the amendment has no bearing on the specific issue raised in this appeal.

Absent such a provision, the court determined that a "successful plaintiff should not have his damage recovery unduly diminished by his making an additional payment to an attorney compensated by the fee awarded by the court" (*id.* at 258).

In *Bates v Kuguenko* (100 F3d 961 [9th Cir 1996] [table; text at 1996 WL 654449, *1, 1996 US App LEXIS 29385, *1 (1996)]), the contract at issue called for the attorney to receive 40% of the "damages recovered," and counsel argued that "damages" should include the statutory award. The Ninth Circuit rejected this argument, noting the ease with which the lawyer could have specified in the contract that the fee award should be "included 'in the pot' divided by counsel and client" (1996 WL 654449, *1, 1996 US App LEXIS 29385, *4). The court held that, "[u]nless otherwise agreed to . . . fee awards are deducted from, rather than added to, the sum divided in the determination of the contingency fee" (*id.*). *Bates* further justified this approach as "prevent[ing] 'windfall recoveries' by the attorneys of civil rights plaintiffs" (1996 WL 654449, *1, 1996 US App LEXIS 29385, *3, citing *Venegas v Skaggs*, 867 F2d 527, 534 and n 7 [9th Cir 1989], *affd sub nom. Venegas v Mitchell*, 495 US 82 [1990]; *see also Ross v Douglas County, Neb.*, 244 F3d 620, 621-622 [8th Cir 2001]; *Lewis v Coughlin*, 801 F2d 570, 576 [2d Cir 1986]; *Daly v Hill*, 790 F2d 1071, 1085 [4th Cir 1986]; *Sullivan v Crown Paper Bd. Co., Inc.*, 719 F2d 667, 669-670 [3d Cir 1983]; *Wheatley v Ford*, 679 F2d 1037, 1040-1041 [2d Cir 1982]; *Sargeant v Sharp*, 579 F2d 645, 649 [1st Cir 1978]).

Several state high courts have followed a similar rule (*see Cambridge Trust Co. v Hanify & King Professional Corp.*, 430 Mass 472, 480, 721 NE2d 1, 7 [1999] ["The better approach . . . simply permits the attorney to recover the amount set by the contingent fee agreement or the court-awarded fees, whichever is greater" (citation omitted)]; *State ex rel. Oklahoma Bar Assn. v Weeks*, 969 P2d 347, 356, 1998 OK 83 [1998], *cert denied* 525 US 1042 [1998] [" '(i)n general, the cases explicitly or implicitly hold that the statutory award of attorney fees should not be treated as an amount in addition to that received or to be received by the attorney under a contingent fee contract' "], quoting Debra T. Landis, *Effect of Contingent Fee Contract on Fee Award Authorized by Federal Statute*, 76 ALR Fed 347, 352 [1986]; *Luna v Gillingham*, 57 Wash App 574, 581, 789 P2d 801, 805 [1990] [holding that "because (the attorney) failed to provide for allocation of court-awarded attorneys' fees in the contingent fee agreement . . . the court-awarded attorneys' fees

should apply as a credit to the plaintiffs in computing . . . (the) contingent fee"]; *Chalmers v Oregon Auto. Ins. Co.*, 263 Or 449, 454-455, 502 P2d 1378, 1381 [1972] [same]).

■ Thus, both federal precedent and instructive decisions from our sister states evince that,

> "absent a contractual provision to the contrary, the trend is to calculate the contingency fee based on the amount of the judgment exclusive of the fee award, and then credit the fee award to the client as an offset against the contingency fee owed. Under this approach, the attorney should be entitled to receive either the contingent fee calculated on the amount of the damage recovery exclusive of any court-awarded fees, or the amount of the court-awarded fee, whichever is greater" (1 Robert L. Rossi, Attorneys' Fees § 2:12 at 37-38 [3d ed 2013]).

In the context of the present case, concerning construction of retainer agreements in conjunction with attorneys' fees awarded pursuant to the NYCHRL, such an approach comports with our precedent holding that ambiguous fee agreements should be interpreted against the drafting attorney (*see King*, 7 NY3d at 191; *Shaw*, 68 NY2d at 176; *Jacobson*, 66 NY2d at 993).

In addition, permitting counsel to collect a statutory award that exceeds the amount due under a contingency fee agreement advances the "uniquely broad and remedial purposes" of the NYCHRL (Administrative Code of City of NY § 8-130) by incentivizing the private bar to represent civil rights plaintiffs even where any damage award is likely to be insubstantial (*see McGrath*, 3 NY3d at 428; Administrative Code of City of NY § 8-502, as amended by Local Law No. 85 [2005] of City of NY). In this regard, freedom of contract is also respected since, in the event that the statutory award is less than the contingency fee, deducting the court-awarded fees from the sum owed under the contract ensures that the attorney receives, and the client pays, no more or less than they bargained for (*see Venegas*, 495 US at 90).

On the facts before us, we need not decide whether a retainer agreement entitling an attorney to court-ordered counsel fees in addition to the full contingency fee would be enforceable. We would note, however, that such an arrangement would be subject to requisite scrutiny under applicable laws and rules controlling the reasonableness of attorney compensation (*see e.g.* Judiciary

Law § 474; Rules of Professional Conduct [22 NYCRR 1200.00] rule 1.5; *see also Cambridge Trust Co.*, 430 Mass at 480, 721 NE2d at 7; *State ex rel. Oklahoma Bar Assn.*, 969 P2d at 357).

Here, the Trial Agreement does not address the treatment of statutory counsel fees so that Dorman is entitled to the more generous alternative of either one third of the jury verdict or the statutory award for her trial work. This result reflects the presumption that attorneys are eminently capable of drafting unambiguous contingency fee contracts and ensuring that their clients understand what they will be charged.

■ Turning to the Appellate Agreements, those contracts stand in direct contrast to the Trial Agreement by clearly and unambiguously dealing with the relationship between contractual fees and statutory awards. If successful on appeal, each client would owe Dorman $20,000. In the event that the court awarded statutory fees for appellate work in excess of that amount, Dorman was entitled to those fees "in their entirety," and the clients would owe her nothing. On the other hand, if the court-ordered fees fell short of the $20,000 mark, the clients would have to make up the difference.

Albunio and Connors do not claim that the Appellate Agreements are ambiguous. Rather, they argue that the contracts are unenforceable because an appeal is considered "not a separate action, but a continuation of one" (*Suzuki v Yuen*, 678 F2d 761, 763 [9th Cir 1982]). Therefore, appellants claim, the statutory awards for both trial work *and* the appeals should offset the contingency fee owed to Dorman under the Trial Agreement.

However, the cases relied upon by appellants characterize an appeal as a continuation of the underlying action in the context of calculating statutory fees for appellate work (*see e.g. Suzuki*, 678 F2d at 763; *Perkins v Standard Oil Co. of Cal.*, 474 F2d 549, 552-553 [9th Cir 1973]). Because preparing an appeal logically builds upon earlier efforts, fees awarded for appellate work are generally less than those allocated for the trial phase (*see id.*). This rule of thumb is wholly inapposite to the question of whether attorneys and clients can negotiate a different retainer agreement for work done on appeal. Here, the Trial Agreement did not obligate Dorman to represent Albunio and Connors on appeal and she was thus free to negotiate a different fee arrangement.

Appellants further contend that they were induced under duress to agree to the terms of the Appellate Agreements, claiming

that Dorman misrepresented the likelihood of obtaining statutory counsel fees for appellate work and "demanded" that they accept her terms of payment. Neither argument is supported by the record.

First, nothing prevented appellants from rejecting Dorman's offer and retaining new counsel to represent them on appeal, as litigants frequently do. Furthermore, that Dorman indicated to appellants the time-sensitive nature of selecting appellate counsel is not tantamount to duress, especially since she proposed the terms of the new agreement with sufficient time to retain substitute counsel before the brief on appeal was due. Finally, an award of attorneys' fees under the NYCHRL is always discretionary, be it for trial or appellate work (see Administrative Code of City of NY § 8-502 [f] ["the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees"]). It is therefore not unreasonable that Dorman sought a guarantee of minimum payment for her appellate work in the event that the appeals were successful and the statutory award minimal. Appellants have failed to present grounds on which the Appellate Agreements should be set aside.

Therefore, in light of their unequivocal terms, the Appellate Agreements should be enforced as written. Because the statutory appellate fees exceeded the contracted-for minimum of $20,000 per appellant, per appeal, Dorman is entitled to receive those court-ordered fees in their entirety. As for compensation owed to Dorman for her representation at trial, she is entitled to collect either one third of the jury award, or the statutory trial fees, whichever is greater.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be modified, with costs to appellants, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

Judges GRAFFEO, READ, SMITH, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order, insofar as appealed from, modified, with costs to appellants, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.