[998 NYS2d 370]

Shelton Stewart, Appellant, v New York City Transit Authority, Respondent.

First Department, December 30, 2014

## APPEARANCES OF COUNSEL

*Alexander J. Wulwick*, New York City, for appellant.

*Smith Mazure Director Wilkins Young & Yagerman, P.C.*, New York City (*Joel M. Simon* of counsel), for respondent.

## OPINION OF THE COURT

MANZANET-DANIELS, J.

The motion court erroneously determined that it had the inherent authority to reduce the fee plaintiff and his attorneys had agreed upon in connection with the successful defense of the verdict on appeal. Since the parties clearly excluded appellate work from the initial retainer, and executed a second retainer providing for a separate fee for appellate work, it cannot be said that the award of an additional 10% contingency fee ran afoul of precedent or section 603.7 (e) of the Rules of the Appellate Division, First Department (22 NYCRR), governing contingent fee arrangements. We accordingly reverse.

On December 7, 1998, plaintiff retained nonparty law firm Sonin & Genis to prosecute his negligence action against defendant arising out of a slip and fall at an elevated subway station. Plaintiff and the firm entered into a retainer agreement on an approved Office of Court Administration form providing for a one-third contingent fee of the net recovery through trial and further providing that in the event of an appeal a separate fee agreement would be entered into. The agreement specifically stated, "Client further understands that the services to be provided through this agreement will not extend through the prosecution of an appeal or representation on appeal brought by any of the parties to the lawsuit," and that "[c]lient understands that SONIN & GENIS, ESQS may charge reasonable additional compensation . . . if the case is appealed . . . . This further representation will require a new [f]ee [a]greement."

The firm represented plaintiff throughout seven years of discovery, motion practice and trial preparation. Following a three-week trial, the jury returned an approximately $7 mil-

lion verdict in plaintiff's favor. The firm successfully opposed defendant's posttrial motions, and entered into a structured judgment which provided that the firm would receive attorneys' fees equal to one third of the recovery.

Defendant appealed the judgment to this Court. On July 19, 2010, plaintiff and Sonin & Genis entered into a new and separate retainer agreement pursuant to which it was agreed that the firm would "provide APPELLATE legal services" for 10% of the net sum recovered. The second retainer expressly stated that

> "[c]lient further understands that the services to be provided through this agreement is [sic] only for prosecution/defense of an appeal only and for no other purpose, and is [sic] in addition to the retainer signed for the litigation and trial of this matter, wherein SONIN & GENIS, ESQS., are to receive ONE THIRD (33⅓%) OF THE NET RECOVERY."

On March 3, 2011, this Court modified the judgment to the extent of setting aside the amounts for lost earnings and future medical expenses unless plaintiff stipulated to a reduction in the amounts awarded, and otherwise affirmed (*Stewart v New York City Tr. Auth.*, 82 AD3d 438 [1st Dept 2011], *lv denied* 17 NY3d 712 [2011]). Plaintiff so stipulated, and an amended judgment was entered on May 5, 2011 reflecting the reductions and granting attorneys' fees in the amount of 43⅓%, i.e., one third plus 10% (2011 WL 1806917 [2011]). Defendant did not contest the award of attorneys' fees. Following the denial of motions for reargument (2013 WL 6857162 [2013]) and leave to appeal to the Court of Appeals (during which defendant, again, did not contest the award of attorneys' fees), a further amended judgment, containing the same terms but providing for additional costs and interest, was signed and entered on December 16, 2011, and served on defendant with notice of entry.

On February 16, 2012, defendant moved by order to show cause for a stay of enforcement of the December 16, 2011 judgment and to vacate it, pursuant to CPLR 5015 (a), on the ground that the attorneys' fees were "erroneously set . . . in excess of 40%."

Plaintiff opposed the motion, arguing that defendant lacked standing to challenge the contracts between plaintiff and his attorneys, and had waived its right to make the motion at that late stage of the litigation. Plaintiff asserted that since the

Court of Appeals refused to alter or vacate the May 5, 2011 judgment (which differed only in the calculation of costs and interest), the motion court lacked authority to revisit the issue of the propriety of the judicially approved judgment or its terms. Plaintiff cross-moved for sanctions and for acceleration of the payment of the further amended judgment in a lump sum, pursuant to CPLR 5043 (b) and 5044.

By order entered January 14, 2013, the motion court granted defendant's motion "to the extent that plaintiff's attorney is not entitled to additional fees for the appeal." The court did not rule on plaintiff's cross motion for sanctions and for acceleration of the judgment.

We now reverse, and hold that the motion court lacked the authority to reach the issue of the propriety of the fee arrangement between plaintiff and his counsel. We find, moreover, that the contractual arrangement between plaintiff and his attorneys providing for a separate fee for appellate work was entirely proper and in conformity with the rules of this Court.

■ Initially, we note that defendant has no standing to challenge the fees agreed upon as between plaintiff and his counsel. CPLR 5015 (a) (3) provides that "[t]he court which rendered a judgment or order may relieve a party from it upon such terms as may be just, *on motion of any interested person* . . . upon the ground of . . . fraud, misrepresentation, or other misconduct of an adverse party" (emphasis added). Defendant is not an "interested person" within the meaning of the statute, as even the motion court appeared to recognize. Defendant will pay the same amounts pursuant to the judgment regardless of the division of fees as between plaintiff and his counsel. Defendant's proffered rationale as to why it has standing to challenge the award—that one day in the unforeseen future, plaintiff might seek to hold it liable for excess fees disbursed to his attorney—does not withstand scrutiny.

Further, there is no evidence whatsoever that the judgment was procured by fraud, misrepresentation or other misconduct by plaintiff or his attorneys. As the motion court went out of its way to remark, "[T]here is absolutely no feeling or finding of bad faith, unconscionable conduct, on [the part] of Mr. Genis [plaintiff's attorney]."

■ Defendant having no standing under CPLR 5015 (a) (3) to challenge the separate fee for appellate work, the court relied on its "inherent authority" to reach the issue. A court, however, has no inherent authority to sua sponte reach the issue of at-

torneys' fees (*see State of New York v Philip Morris Inc.*, 308 AD2d 57 [1st Dept 2003], *lv denied* 1 NY3d 502 [2003]). In *Phillip Morris Inc.*, we noted that a court has inherent authority over attorneys' fees in "two situations: (i) an attorney asking the court to approve a fee, or (ii) a client complaining about a fee" (*id.* at 68-69). We distinguished between the inherent power of courts to promulgate rules of general applicability regarding attorneys' fees, and an individual judge's authority to conduct "a sua sponte inquiry into the appropriate amount of attorneys' fees" (*id.* at 68). In the latter case, the Supreme Court "ha[s] no authority or jurisdiction sua sponte to make an independent inquiry into the amount of or method used in fixing the attorneys' fees" (*id.* at 65).

Moreover, Supreme Court was without jurisdiction to revisit the issue of the propriety of the fees, even upon the motion of a proper party. Since the Court of Appeals denied applications for review of the May 5, 2011 judgment (which contained the same apportionment of fees, the subsequent judgment differing only in the calculations of costs and interest), the judgment was final, and Supreme Court lacked jurisdiction to, in effect, reverse the Court by modifying the judgment (*see Pjetri v New York City Health & Hosps. Corp.*, 169 AD2d 100, 103-107 [1st Dept 1991] ["once the appellate process has been concluded, alleged errors of law which could have been reviewed but were not, may not be addressed except insofar as the grounds for relief set forth in CPLR 5015 are present"], *lv dismissed* 79 NY2d 915 [1992]).

■ Counsel herein is entitled to a separate fee for work performed in connection with the appeal, and is not limited to one third of the recovery as set forth in the initial retainer. Where the parties expressly contemplate additional fees in connection with a successful appeal, such an award is legally and ethically permissible, and does not run afoul of the rules of this Court governing contingent fee arrangements. Indeed, the Court of Appeals, in the recent case of *Albunio v City of New York* (23 NY3d 65 [2014]), recognized that attorneys and their clients can negotiate a different retainer agreement for work performed in connection with an appeal (*id.* at 76).

In making this determination, we are guided by the clear and unequivocal language of the retainer agreement in this case, which was expressly limited to work through trial; explicitly excluded appellate work from the scope of the retainer; and provided that any work done by the firm on the

appeal would be performed under a separate fee agreement providing for further compensation for the firm and appellate counsel.

Plaintiff, in an affidavit submitted in opposition to defendant's motion to vacate, acknowledged that he understood that the attorneys "were only agreeing to represent me through trial, and that if there were any appeals, that a separate retainer would have to be signed, with a separate fee agreement" amounting to "an additional ten percent . . . of the recovery." Plaintiff averred that the attorneys worked "relentless[ly]" on his behalf, and that he was "extremely satisfied" with their representation. Plaintiff averred that payment of an additional 10% of the recovery of the appeal seemed fair and appropriate, given the circumstances and the extraordinary amount of work required. Plaintiff had the opportunity to hire other appellate counsel, but declined, trusting Mr. Genis's skill, judgment, knowledge, work ethic, and talent.

Plaintiff's expert, a leading expert on legal ethics, opined that it was legally and ethically permissible for the firm to collect a separate fee for appellate work, notwithstanding that the firm is entitled, under the original retainer, to a contingency fee of one third of the recovery. Plaintiff's expert opined that limiting counsel's contingent fee to that encompassed in the initial retainer "does not advance the purpose behind Section 603.7 . . . i.e., protecting clients from gouging by attorneys." The expert also observed that had plaintiff chosen to retain new counsel for the appeal, there would be absolutely no question that the new counsel would be entitled to a fee for his or her work, notwithstanding the fact that trial counsel was entitled to receive 33⅓% of any recovery. Plaintiff's expert noted that it would be "anomalous" to assert that trial counsel should be compensated less favorably than new counsel for performing the work that had not been contemplated by the initial retainer.

This is not a case, like those relied on by defendant, in which the retainer did not contemplate an additional fee for the appeal, or an attorney sought a midstream modification of the original fee agreement (compare Matter of Cramer, 24 AD3d 864, 865-866 [3d Dept 2005] [retainer did not contemplate additional contingent fees, and client registered objection to additional fees sought]; Naiman v New York Univ. Hosps. Ctr., 351 F Supp 2d 257 [SD NY 2005] [retainer silent on the issue of fees for the appeal]; Belzer v Bollea, 150 Misc 2d 925 [Sup

Ct, NY County 1990] [client objected to enhanced contingent fee not contemplated in initial retainer]; *Siagha v David Katz & Asssoc., LLP*, 16 Misc 3d 1130[A], 2007 Slip Op 51650[U], *10-11 [Sup Ct, NY County 2007] [retainer agreement silent as to fees for appellate work or collateral litigation, and the plaintiff objected to an enhanced contingency fee]).

█ Nor is the charging of a separate fee for appellate work prohibited by section 603.7 (e) of this Court's rules (22 NYCRR 603.7 [e]), which sets forth schedules of permissible contingent fee arrangements in personal injury cases other than those involving medical practice. Section 603.7 does not address the specific question presented by this case—namely, whether the firm can receive separate compensation under a separate retainer agreement for appellate work not covered by the original retainer, when the original retainer provided for a one-third contingency fee for work performed through trial.

The dissent opines that the fee arrangement for appellate work in this case was somehow improper. Yet even the dissent is compelled to admit that no statute, rule or case law prohibited the arrangement. The dissent recognizes that had plaintiff engaged another attorney to defend the verdict on appeal, said attorney would be entitled to a fee for the appellate work. That the attorneys who represented plaintiff through trial also represented him on the appeal ought not to deprive them of the fee to which they are entitled by the clear and unambiguous terms of the retainer agreements.

We remit the matter to Supreme Court so that it might rule on plaintiff's cross motion pursuant to CPLR 5043 (b) and 5044 for acceleration of the judgment and payment in full of a lump sum.

Accordingly, the order of the Supreme Court, Bronx County (Stanley Green, J.), entered January 14, 2013, which, in this personal injury action, to the extent appealed from as limited by the briefs, granted defendant's motion to vacate a further amended judgment to the extent it ordered defendant to pay plaintiff's counsel additional legal fees for the underlying appeal, and denied plaintiff's cross motion to accelerate payment of the judgment, should be reversed, on the law, without costs, defendant's motion denied, and the matter remanded to Supreme Court for consideration of plaintiff's cross motion. The appeal from the order of the same court and Justice, entered May 15, 2013, which denied plaintiff's motion for reargument, improperly denominated a motion for renewal and/or

reargument, should be dismissed, without costs, as taken from a nonappealable order.

SAXE, J. (dissenting). An apparently straightforward court rule, establishing schedules setting maximum contingency fees that may be charged in personal injury and wrongful death cases (*see* Rules of App Div, 1st Dept [22 NYCRR] § 603.7 [e]), presents a problem here because while it sets policy regarding the maximum allowable contingency fee, it fails to make any mention of whether, or how, that policy applies to appeals. In the present case, the nonparty law firm's initial retainer agreement charged the maximum allowable contingency fee for its work, but specified that its retainer was only for trial work and did not cover appellate work. Then, having prevailed at trial, entitling it to the maximum contingency fee, it entered into a new retainer agreement with the client, in which the firm charged the client an additional 10% contingency fee for its appellate work. Although no statute, rule or case law specifically prohibits that arrangement, I believe that it contravenes the spirit and purpose of this Court's rule.

Attorney retainer agreements, although subject to judicial scrutiny on grounds of unconscionability (*Shaw v Manufacturers Hanover Trust Co.*, 68 NY2d 172, 176 [1986]), are generally treated as entitled to enforcement, as any other contract: "As a general rule, we enforce clear and complete documents, like the revised retainer agreement, according to their terms" (*Matter of Lawrence*, 24 NY3d 320, 341 [2014]). However, when retainer agreements provide for contingency fees in personal injury and wrongful death matters, court rules of each judicial department impose additional limitations on attorneys (*see* 22 NYCRR 603.7 [e]; 691.20 [e]; 806.13 [b]; 1022.31 [b]). Limitations are also imposed by statute for medical, dental and podiatric malpractice actions (*see* Judiciary Law § 474-a). Specifically, the foregoing rules define and limit reasonable fees for attorneys to maximums set by provided fee schedules. The schedule applicable here, under 22 NYCRR 603.7 (e), permits the attorney to contract for a fee equal to a maximum of one third of the net recovery. The question presented here is whether, under the present circumstances, section 603.7 (e) precludes trial counsel from contracting with the client for an additional percentage of the recovery, beyond that one-third fee, as counsel's fee for the preparation of the client's appellate case. I believe that the motion court was correct when it

vacated the further amended judgment insofar as the judgment directed defendant to pay to plaintiff's counsel, from the total amount awarded, legal fees totaling 43⅓% of the award.

Preliminarily, I disagree with the majority's conclusion that defendant Transit Authority lacked standing to bring the motion. Because its application was a motion rather than an appeal, the question is not whether the Transit Authority is aggrieved, as would have been required by CPLR 5511 if it were the appellant; rather, the applicable standard is simply whether the movant is an "interested person" under CPLR 5015 (a). To establish that showing, the movant must show "some legitimate interest . . . [that would] be served and that judicial assistance [would] avoid injustice" (*Oppenheimer v Westcott*, 47 NY2d 595, 602 [1979] [internal quotation marks omitted]). The legitimate interest presented by the Transit Authority was, contrary to the law firm's dismissive characterization, a very real possibility. That is, as the Transit Authority pointed out, at some later date plaintiff could have challenged the propriety of its counsel taking an extra 10% of the award for its fee on appeal. Furthermore, in doing so, plaintiff could seek to recoup that extra 10% not only from his trial/appellate counsel, but also from the Transit Authority, on the ground that the Transit Authority should have known of the impropriety of paying directly to plaintiff's counsel a contingency fee larger than the permissible one third.

The majority asserts that there is no misconduct supporting a vacatur of the judgment as required by CPLR 5015. However, if the fee to plaintiff's counsel provided for by the judgment violated applicable court rules regarding the maximum allowable contingency fee, that rule violation could constitute misconduct in procuring the judgment such as would properly support the remedy provided by CPLR 5015 (a) (3).

In my view, the motion court had the authority to vacate the directive ordering defendant to pay plaintiff's counsel legal fees totaling 43.3% of the amount awarded. "[I]t is well established that Supreme Court has inherent power to supervise the fees attorneys charge for legal services" (*Matter of Stortecky v Mazzone*, 85 NY2d 518, 525 [1995]), and "a court may vacate its own judgment for sufficient reason and in the interests of substantial justice" (*Woodson v Mendon Leasing Corp.*, 100 NY2d 62, 68 [2003]). Since attorneys are barred from charging fees that are excessive or unreasonable (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.5 [a]), and attorneys in

personal injury cases are more particularly limited to an established maximum percentage (22 NYCRR 603.7 [e]), and since the Transit Authority qualified as an "interested person" to bring the issue before the court pursuant to CPLR 5015 (a), the motion court was certainly authorized to rule on the question. But, even if the Transit Authority had not been a proper party to make the application, the majority's reliance on *State of New York v Philip Morris Inc.* (308 AD2d 57 [1st Dept 2003], *lv denied* 1 NY3d 502 [2003]), is misplaced. In that action against tobacco companies and related entities to recover the costs incurred by the state and local government for treating smoking-related illnesses, this Court held that a Commercial Division justice was not authorized to inquire, sua sponte, into an arbitration panel's award of legal fees payable by the tobacco companies to outside counsel under a settlement agreement, where the consent decree and final judgment precluded modifications or future applications to the court unless necessary or appropriate to implement or enforce the consent decree (*id.*). The judgments at issue here did not contain such preclusions.

I therefore turn to the crux of the presented issue, namely, whether plaintiff's trial counsel may be paid an additional fee for work performed in connection with an appeal, beyond the one third permitted by court rule.

Notably, the purpose of the rule setting a maximum allowable fee is to "protect unsophisticated personal injury and wrongful death plaintiffs from agreeing to unconscionable fee arrangements with unscrupulous lawyers" (*Rakower v Lavi*, 2009 NY Slip Op 31905[U] [Sup Ct, NY County 2009]). Indeed, this Court has observed that the primary purpose of 22 NYCRR 603.7 "is protection of the public through monitoring of the fees charged by practitioners at the Bar" (*Rabinowitz v Cousins*, 219 AD2d 487, 488 [1st Dept 1995]). Since the purpose of the rule is to protect clients from overreaching attorneys, it is not relevant to our analysis that plaintiff agreed to the additional 10% payment.

Although the rule does not specifically refer to whether the permitted fee covers appellate work, I believe that allowing counsel to accept a 43⅓% fee contravenes the spirit of, and policy behind, the court rule, which, in its essence, precludes a plaintiff's attorney in a personal injury case from accepting a fee greater than one third of the total award.

The majority cites *Albunio v City of New York* (23 NY3d 65 [2014]) in support of the proposition that counsel is entitled to

be paid a separate fee for work performed in connection with an appeal, beyond the amount permitted for trial work. However, the Court of Appeals's approval in *Albunio* of "attorneys and clients . . . negotiat[ing] a different retainer agreement for work done on appeal" where the trial retainer "did not obligate [counsel] to [continue to] represent [the client] on appeal" (*id.* at 76), arose in the context of an action brought under the New York City Human Rights Law, to which 22 NYCRR 603.7 had no applicability. Unlike *Albunio*, here section 603.7 (e) is squarely applicable, and that rule establishes that a contingency fee beyond one third of the total award is excessive.

Indeed, the majority's interpretation of section 603.7 leaves appellate counsel in personal injury cases without any limitations or guidance on whether they may demand contingency fees, or how much they may demand, when handling appeals in personal injury matters, aside from the broad and general prohibition against excessive fees (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.5 [a]). We should keep in mind that in personal injury litigation, the need for an appeal is virtually assured unless the judgment is the result of a settlement. Although clients may well accede to the terms of form retainer agreements proffered by their attorneys, specifying that the agreed-on counsel fee will not cover any necessary postjudgment work, the clients may not understand the probability that further legal work will be needed in the event they prevail at trial, or the extent to which an additional contingency fee for appellate work could reduce the amount they will ultimately receive.

Even assuming that the rule's permissible maximum contingency fee was not intended to include counsel fees for appellate work, I submit that the stated maximum *should* include those fees, at least where counsel who handled the trial also handles the appeal. It bears emphasis that where a law firm is defending on appeal an award it won for its client at trial, the law firm is defending its own fee as much as the client's award, and its interest in doing so may be as pressing as the client's own interest in prevailing. Moreover, the work of preparing the appeal is far less burdensome for trial counsel than what would be required of an attorney with no prior familiarity with the case, because trial counsel possesses a uniquely intimate and thorough knowledge of the record and all the legal arguments. Indeed, appeals of personal injury verdicts are often largely

challenges to the amount of the damages awarded, further limiting the scope of the necessary appellate representation. With these thoughts in mind, it makes sense that the maximum fee allowable to trial counsel under section 603.7 should include the additional work of its representation of the client on appeal.

Another problem with the rule's failure to provide for the allowable contingency fee percentage for appellate work is that seemingly reasonable percentage amounts, like 10% or 20% or 33$^1$/$_3$%, can quickly bring the total of counsel fees to a major portion of the judgment awarded when added to trial counsel's one third.

For the present purposes, I am not suggesting that a new attorney taking on the task of representing the client for purposes of appeal could not be entitled to a separate fee. Nor am I suggesting that trial counsel has an obligation to undertake the appeal. My only concern here is that an additional percentage should not be paid to the law firm that handled the trial, when the firm is already receiving the maximum allowable fee. In these circumstances, the rule's maximum allowable fee should also cover the work of representing the client on appeal.

MAZZARELLI, J.P., and FEINMAN, J., concur with MANZANET-DANIELS, J.; FRIEDMAN and SAXE, JJ., dissent in a separate opinion by SAXE, J.

Order, Supreme Court, Bronx County, entered January 14, 2013, reversed, on the law, without costs, defendant's motion denied, and the matter remanded to Supreme Court for consideration of plaintiff's cross motion. Appeal from order, same court and Justice, entered May 15, 2013, dismissed, without costs, as taken from a nonappealable order.