■ EDWARD TESSER, Respondent-Appellant, v ALLBORO EQUIPMENT COMPANY et al., Appellants-Respondents. [904 NYS2d 701]—

In an action, inter alia, to recover in quantum meruit, the defendants Allboro Equipment Company, Irving Vichinsky, and Neal Vichinsky appeal from a judgment of the Supreme Court,

Queens County (Yablon, Ct. Atty. Ref.), entered July 7, 2008, which, upon a decision of the same court dated December 31, 2007, made after a nonjury trial, and upon an order of the same court dated May 27, 2008, denying the plaintiff's motion for an award of predecision interest pursuant to CPLR 5001, is in favor of the plaintiff and against the defendants Allboro Equipment Company and Irving Vichinsky in the principal sum of $240,250, and the plaintiff cross-appeals, as limited by his brief, from so much of the same judgment as failed to award him compensation for leasing certain real property owned by the defendant Allboro Equipment Company, and failed to award him predecision interest.

Ordered that the appeal by the defendant Neal Vichinsky is dismissed, without costs or disbursements, as that defendant is not aggrieved by the judgment appealed from (see CPLR 5511); and it is further,

Ordered that the judgment is modified, on the law, on the facts, and in the exercise of discretion, (1) by reducing the award from the principal sum of $240,250 to the principal sum of $87,743.22, and (2) by adding a provision thereto awarding the plaintiff interest on the award at the statutory rate pursuant to CPLR 5004 from July 30, 1999; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Queens County, for entry of an appropriate amended judgment.

In 1982, the plaintiff, who was then the husband of the defendant Linda Tesser and son-in-law of the defendant Irving Vichinsky (hereinafter Irving), had a conversation with Irving about certain commercial property located in Brooklyn (hereinafter the property). The property was owned by a corporation. Irving, Tesser, and the defendant Neal Vichinsky (hereinafter Neal) were that corporation's shareholders.

The plaintiff testified that during the conversation, Irving indicated that due to health issues, he was incapable of managing the property, which, at the time, was unprofitable. The plaintiff then told Irving that he would manage the property. According to the plaintiff, Irving responded: "You understand, I can't pay you now." However, the plaintiff, who pointed out that he had "a job" and was "making a living," told Irving: "[T]hat's fine . . . [I]f [the property] becomes an income producing property in the future . . . then I would . . . be expected to be compensated for that."

Later that year, the plaintiff began managing the property. He testified that he believed that he had "a deferred compensation type deal going," whereby he would "get paid at some point in

the future." Under his stewardship, the property generated significant amounts of rental income.

In a partnership agreement dated January 5, 1987, Irving, Neal, and Linda, who dissolved the corporation, formed a partnership, the defendant Allboro Equipment Company (hereinafter Allboro). Allboro took title to the property.

In a letter to the plaintiff dated April 28, 1999, Irving, whose relationship with the plaintiff had deteriorated, directed the plaintiff to stop managing the property, and the plaintiff complied.

In a letter to Irving dated July 30, 1999, the plaintiff, who maintained that he never received any compensation for the services he rendered in the 17-year period from 1982 to 1999, demanded compensation for those services. Irving rejected that demand by letter dated August 4, 1999.

In March 2001, the plaintiff commenced the instant action, asserting causes of action, inter alia, to recover damages in quantum meruit. The quantum meruit cause of action proceeded to a nonjury trial before a referee, who had been appointed to hear and determine the matter.

At the commencement of the trial, the plaintiff, who, in the complaint, indicated that he sought to be compensated for services he performed from January 5, 1987, to April 1999, moved for leave to amend the complaint so as to demand compensation for services he performed from 1982 to April 1999. After the trial, the referee issued a written decision, finding that the plaintiff was entitled to damages in the sum of $240,250, representing 5% of gross rent receipts for the 17-year period from 1982 to April 1999. Thus, the referee, in effect, granted the plaintiff leave to amend the complaint.

After the referee issued the decision, the plaintiff moved for an award of predecision interest pursuant to CPLR 5001. That motion was denied by order dated May 27, 2008. Judgment was then entered in favor of the plaintiff and against Allboro and Irving in the principal sum of $240,250, with interest from the date of the decision. This appeal and cross appeal ensued.

Allboro and Irving argue that the referee improperly determined that the plaintiff established a claim in quantum meruit. In reviewing a determination made after a nonjury trial, this Court's authority is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d

492, 499 [1983]; *Hoffinger Indus., Inc. v Alabama Ave. Realty, Inc.*, 68 AD3d 818, 820 [2009]). The referee's determination that the plaintiff established a claim in quantum meruit is warranted by the facts.

In order to succeed on a cause of action to recover in quantum meruit, the plaintiff must prove (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they were rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services (*see Miranco Contr., Inc. v Perel*, 57 AD3d 956, 957 [2008]; *Umscheid v Simnacher*, 106 AD2d 380 [1984]). Here, the plaintiff established that he performed certain services and that those services were accepted by the appellants, and also presented evidence concerning the reasonable value of those services. Contrary to the contention of Allboro and Irving, the plaintiff also established that even though, at the time he performed his services, he had a "very good" relationship with Irving, who was "like a father" to him, he nevertheless had an expectation of compensation at the time he was performing his services (*cf. Matter of Alu*, 302 AD2d 520 [2003]), expecting to receive that compensation at some point in the future.

However, the referee improperly awarded the plaintiff damages with respect to the five-year period from 1982 to 1987. In the complaint, the plaintiff specifically alleged that he began performing the services he sought compensation for "no earlier than January 5, 1987," i.e., the date Allboro was formed. Although the plaintiff testified at his deposition that he began performing his services in 1982, he did not move for leave to amend the complaint to include a demand for compensation for services he performed from 1982 to April 1999 until the commencement of the trial. Where a motion for leave to amend a complaint is made long after the case is certified ready for trial, judicial discretion in allowing the amendment should be discrete, circumspect, prudent and cautious, and where, as here, the motion is made on the eve of trial, "judicial discretion should be exercised sparingly" (*Morris v Queens Long Is. Med. Group, P.C.*, 49 AD3d 827, 828 [2008]). If a grant of leave to amend under such circumstances causes prejudice or surprise, the grant of leave constitutes an improvident exercise of discretion (*see Countrywide Funding Corp. v Reynolds*, 41 AD3d 524, 525 [2007]), especially in cases where there is no reasonable excuse offered for the delay in seeking leave to amend (*see Velez v South Nine Realty Corp.*, 57 AD3d 889, 892 [2008]). The date January 5, 1987, specified in the complaint, is significant, since, prior to that date, the property was owned by a corporation. Since any

compensation owed to the plaintiff for services he performed from 1982 through 1986 might have been an obligation of the corporation, which is not a party to this action, the belated amendment of the complaint caused prejudice to Allboro and Irving. Furthermore, the plaintiff proffered no excuse for the delay in seeking leave to amend the complaint. Under these circumstances, the granting of leave to amend constituted an improvident exercise of discretion.

On the question of reasonable compensation for the plaintiff's services, we agree with the contention of Allboro and Irving that the plaintiff's expert testified as to what he himself would have charged as an experienced property manager, as opposed to what the reasonable value of the plaintiff's services were. When asked whether his testimony was that the plaintiff should be paid "on a pay rate that's commensurate with what is the minimum with what your organization would charge," the expert acknowledged: "Not exactly." He further acknowledged that there was no standard fee, especially when a family member was involved.

On the other hand, the defense expert testified that generally, the fee for managing commercial rental property is closer to 3% or 4% of gross rent receipts, or perhaps 5% of gross rent receipts, but, considering the documented deficiencies in the plaintiff's performance, the reasonable value of the plaintiff's services was from 1¹/₂% to 2% of gross rent receipts. We conclude that the defense expert's testimony was both more pertinent and more credible, and therefore, limit the plaintiff's compensation to 2% of gross rent receipts for the period from 1987 to April 1999, which amounts to 2% of the sum of $4,387,161.15, or the sum of $87,743.22.

On the question of interest, CPLR 5001 (a) provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." Case law indicates that an award of predecision or preverdict interest pursuant to CPLR 5001 on a damages award on a cause of action to recover damages in quantum meruit is mandatory, as it would be on a damages award on a cause of action to recover damages for breach of contract (see Brent v Keesler, 32 AD2d 804, 805 [1969]). Pursuant to CPLR 5001 (b), "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed," which, in the case of a cause of action to recover damages in quantum meruit, is when the plaintiff demanded payment (see Atlas Refrigeration-Air Conditioning,

*Inc. v Lo Pinto*, 33 AD3d 639, 640 [2006]; *Leroy Callender, P.C. v Fieldman*, 252 AD2d 468, 469 [1998]). In view of the foregoing, the plaintiff was entitled to interest at the statutory rate (*see* CPLR 5004) from the date of his demand for payment for his services, i.e., July 30, 1999.

The parties' remaining contentions either are without merit or have been rendered academic in light of our determination. Covello, J.P., Angiolillo, Lott and Roman, JJ., concur.