[994 NYS2d 759]

Martin M. Filler, Appellant, v Anthony Motta, Respondent.

Supreme Court, Appellate Term, Second Department,
2d, 11th and 13th Judicial Districts, August 18, 2014

### APPEARANCES OF COUNSEL

*Martin M. Filler*, Staten Island, pro se, and *Edward R. Finkelstein*, Staten Island, for Martin M. Filler, appellant.
*Anthony Motta*, New York City, respondent pro se.

### OPINION OF THE COURT

MEMORANDUM.

Ordered that so much of the appeal as was taken from the decision is dismissed, as no appeal lies from a decision (*see* CCA 1702); and it is further ordered that the judgment is affirmed, without costs.

On December 11, 2006, plaintiff, an attorney and a financial backer of his son's production company, "Artists & Producers Record Corp., d/b/a Code Red Records," retained defendant, an attorney, to commence a declaratory judgment action on behalf of Code Red against Killah Pride Records, Inc., a California-

based record company, in order to recover amounts allegedly owed to Code Red by Select-O-Hits, a musical recording distributor. The retainer agreement required plaintiff to make an initial payment of $5,000, "against which future services and disbursements will be credited," and provided that defendant would contact plaintiff, in the event the initial retainer was exhausted, "to provide an assessment of the matter and an estimate of future fees and disbursements. You will receive a monthly statement describing the services provided and the disbursements incurred by us, if any, on your behalf." Plaintiff was to be billed for legal services at the rate of $250 per hour. Disbursements or out-of-pocket expenses would be in addition to the foregoing. It was estimated that the cost in obtaining the declaratory judgment would be between "$5,000 and $10,000," but the ultimate cost "would depend upon how vigorously Killah Pride contests the action." While defendant could not guarantee a specific result, "based on the facts and our past dealings with Select-O-Hits, we feel confident that the [Declaratory] Judgment will cause it to pay what it owes to Code Red." It is undisputed that the only amount plaintiff paid to defendant was the $5,000 retainer fee, that defendant did not advise plaintiff when the $5,000 retainer fee was exhausted, and that defendant did not send monthly billing statements to plaintiff. In fact, defendant did not bill plaintiff for his services until April 15, 2008, and then again, on May 22, 2008, for the legal services rendered until May 21, 2008, the date of defendant's discharge.

Defendant had commenced the underlying declaratory judgment action on behalf of Code Red in the Supreme Court of Richmond County, by filing a summons and complaint on February 15, 2007. Due to difficulties in locating Killah Pride and serving the California-based defendant in the underlying action, defendant, in July 2007, submitted to the Supreme Court a proposed ex parte order, permitting service on the California Secretary of State, which order was apparently misplaced by the court and not signed until October 2007. In December 2007, after service on the California Secretary of State had been effectuated, and Killah Pride had failed to appear or answer, Code Red obtained a default declaratory judgment against Killah Pride. Killah Pride's subsequent motion to vacate the default judgment was denied after it failed to appear on March 28, 2008, the return date of the motion. Thereafter, on April 11, 2008, Killah Pride moved "to re-argue the motion setting aside

the default judgment," i.e., in effect, to open its default in appearing on the return date of its motion to vacate the default judgment. Code Red submitted papers in opposition to the motion. The return date of the motion was May 23, 2008. On May 22, 2008, plaintiff discharged defendant as attorney for Code Red in the underlying matter, and advised defendant not to appear at oral argument on the following day, the return date of the motion. Instead, plaintiff appeared for Code Red on the return date. By order entered October 14, 2008, Killah Pride's motion to vacate the default declaratory judgment was denied. Code Red ultimately recovered approximately $73,000 from Select-O-Hits.

Thereafter, plaintiff sought to recover the $5,000 he had paid to defendant as a retainer fee. That fee dispute was submitted to arbitration under Rules of the Chief Administrator of the Courts (22 NYCRR) part 137. As plaintiff was not satisfied with the arbitration award that was subsequently made, he exercised his right to pursue a trial de novo (see 22 NYCRR 137.8) by commencing this action, in which he also sought damages in the total sum of $25,000, asserting causes of action for defendant's alleged breach of contract, legal malpractice, fraud, misrepresentation, and failure of consideration. Defendant interposed counterclaims, seeking to recover the sum of $25,220.07, based on breach of contract and quantum meruit, alleging that plaintiff had promised to pay him on an hourly basis for his legal services, that he had rendered legal services from December 11, 2006 through May 16, 2008, and that plaintiff had only paid him the $5,000 retainer. A nonjury trial was held on three separate dates: October 14, 2009, December 21, 2009 and April 15, 2010, and posttrial memoranda were submitted by the parties on June 15, 2010. In a decision issued April 2, 2012 (35 Misc 3d 1215[A], 2012 NY Slip Op 50710[U]), the Civil Court (Katherine A. Levine, J.), in effect, dismissed the complaint, finding that plaintiff had not established his various causes of action against defendant, and awarded defendant the principal sum of $10,220.07, plus interest from June 21, 2008, finding that defendant was entitled to recover fees for his legal services on the basis of quantum meruit. A judgment was entered on May 23, 2012, pursuant to the April 2, 2012 decision, awarding defendant the total sum of $14,143.74, including, among other things, interest in the sum of $3,608.67.

On appeal, plaintiff contends, among other things, that the Civil Court erred in concluding that defendant had not been

discharged for cause and was therefore entitled to recover legal fees based upon quantum meruit for the reasonable value of his services, in view of the fact that defendant had materially breached the retainer agreement as well as various professional and ethical obligations. Plaintiff also contends that, even if defendant had not been discharged for cause, it was improper for the Civil Court to award prejudgment interest at the statutory rate of nine percent per annum (CPLR 5004), when it took the Civil Court two years to render its decision and when any delay in payment was attributable to defendant's breaches of the retainer agreement and violations of his professional obligations.

The Appellate Division, Second Department, recently stated in *Schultz v Hughes* (109 AD3d 895, 896-897 [2013]):

> "A client has 'an absolute right, at any time, with or without cause, to terminate the attorney-client relationship by discharging the attorney' (*Campagnola v Mulholland, Minion & Roe*, 76 NY2d 38, 43 [1990]; *see Doviak v Finkelstein & Partners, LLP*, 90 AD3d 696, 698 [2011]; *Coccia v Liotti*, 70 AD3d 747, 757 [2010]). Where the discharge is without cause, the attorney may recover the reasonable value of his or her services in quantum meruit (*see Campagnola v Mulholland, Minion & Roe*, 76 NY2d at 44; *Teichner v W & J Holsteins*, 64 NY2d 977, 979 [1985]; *Callaghan v Callaghan*, 48 AD3d 500, 500-501 [2008]; *Lopresti v Ingenito*, 229 AD2d 567 [1996]). In contrast, '[a]n attorney who is discharged for cause . . . is not entitled to compensation or a lien' (*Callaghan v Callaghan*, 48 AD3d at 501; *see Campagnola v Mulholland, Minion & Roe*, 76 NY2d at 44; *Coccia v Liotti*, 70 AD3d at 757). An attorney who violates a disciplinary rule may be discharged for cause and is not entitled to fees for any services rendered (*see Doviak v Finkelstein & Partners, LLP*, 90 AD3d at 699; *Quinn v Walsh*, 18 AD3d 638 [2005]; *Matter of Satin*, 265 AD2d 330 [1999])."

While it is true, as the Civil Court noted, that New York courts have not explicitly defined "cause" as a basis for an attorney's discharge, the case law reflects that the term means that the attorney has engaged in some kind of misconduct, has been unreasonably lax in pursuing the client's case, or has otherwise improperly handled the case (*see Garcia v Teitler*, 2004 WL 1636982, 2004 US Dist LEXIS 13854 [ED NY, July 22,

2004, No. 04 CV 832(JG)], *affd* 443 F3d 202 [2d Cir 2006]). Courts typically find that a discharge is "for cause" where there has been a significant breach of a legal duty (*see Allstate Ins. Co. v Nandi*, 258 F Supp 2d 309, 312 [SD NY 2003]). We agree with the Civil Court that, while the underlying declaratory judgment action did not proceed as expeditiously as possible, defendant ultimately performed the services which he had been retained to perform. In fact, plaintiff admits that his claims are not primarily based upon the nature and quality of defendant's services. While it was inappropriate for defendant not to have billed plaintiff for 16 months after his retention, we note that, during the course of defendant's representation of Code Red, plaintiff, who is not an unsophisticated layperson but rather a licensed attorney, did not complain about defendant's failure to send him monthly billing statements, as per the terms of the retainer agreement. Thus, an inference might be drawn that he acquiesced in and accepted the legal services rendered under the agreement, raising an implied promise to pay for those services (*see generally* 22A NY Jur 2d, Contracts § 629; 7 NY Jur 2d, Attorneys at Law § 222).

To the extent that plaintiff contends that his $5,000 retainer payment was a "charging lien" and that it should have been kept separate from defendant's operating account, plaintiff did not testify at trial that it was his understanding that the $5,000 amount was to be treated in this manner. Indeed, the retainer agreement states, with respect to the $5,000 retainer payment, that "future services and disbursements will be credited" against that amount. The retainer check was actually an advance payment retainer, intended to cover payment of the legal fees expected to be earned during the representation, and need not have been placed in a client trust account (*see* NY St Bar Assn Comm on Prof Ethics Op 816 [2007]).

■ With respect to plaintiff's contention that the interest on the judgment was excessive, particularly in light of the fact that the court did not render its decision in this matter for almost two years after the trial had been conducted, we note that, in the Second Department, an award of prejudgment interest, pursuant to CPLR 5001 (a), at the statutory rate (*see* CPLR 5004), on a quantum meruit recovery is not discretionary but mandatory (*see Tesser v Allboro Equip. Co.*, 73 AD3d 1023 [2010]; *see also Brent v Keesler*, 32 AD2d 804, 805 [1969]), and thus the award will not be disturbed. Moreover, although the Civil Court's decision was not issued within 60 days after the matter

was finally submitted (*see* CPLR 4213 [c]), the court's failure to meet this deadline is not jurisdictional and the decision is valid (*see* David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4213:4). Plaintiff's remedy was "to request a decision informally or to commence a CPLR article 78 proceeding to compel the court to issue a decision" (*Matter of State of New York v Boutelle*, 85 AD3d 1607, 1608 [2011]). Plaintiff did not do so, and, at this juncture, is not in a position to complain.

We find plaintiff's remaining contentions to be without merit.

Accordingly, the judgment is affirmed.

WESTON, J.P., ALIOTTA and ELLIOT, JJ., concur.