Lomtevas v Wanjera (2025 NY Slip Op 50505(U))

[*1]

Lomtevas v Wanjera

2025 NY Slip Op 50505(U)

Decided on April 4, 2025

Appellate Term, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 4, 2025
SUPREME COURT, APPELLATE TERM, SECOND DEPARTMENT, 2d, 11th and 13th JUDICIAL DISTRICTS
PRESENT: : WAVNY TOUSSAINT, P.J., CHEREÉ A. BUGGS, LISA S. OTTLEY, JJ

2024-88 K C

Peter C. Lomtevas, Esq., Appellant,
against
Osundwa Wanjera, Respondent. 

Peter C. Lomtevas, Esq., appellant pro se.
Osundwa Wanjera, respondent pro se.

Appeal from a judgment of the Civil Court of the City of New York, Kings County (Odessa Kennedy, J.), entered November 22, 2023. The judgment, insofar as appealed from as limited by the brief, after a nonjury trial, awarded defendant the principal sum of $2,108.50 on his counterclaim.

ORDERED that the judgment, insofar as appealed from, is affirmed, without costs.
Following the arbitration of a claim that defendant had made for a refund of attorney's fees (see Rules of Chief Admin of Cts [22 NYCRR] Part 137), plaintiff brought this action seeking to recover additional legal fees in the principal sum of $199 in a trial de novo (see Rules of Chief Admin of Cts [22 NYCRR] § 137.8 [a]). Defendant counterclaimed to recover the principal sum of $3,887, alleging "failure to provide proper service."
At a nonjury trial, plaintiff abandoned his claim, so that only defendant's counterclaim remained to be determined. It was established that, in 2018, defendant, who at the time was represented by other counsel, retained plaintiff to represent him in a child custody dispute that was then pending in the Queens Family Court. Plaintiff prepared, and defendant signed, a retainer agreement dated February 23, 2018. The agreement stated that, for a "capped fixed fee" of $7,500, plaintiff would represent defendant "until a satisfactory visitation order is achieved," although it also stated that, "No particular outcome is promised . . . ." It set forth defendant's right to terminate the agreement at any time, whereupon plaintiff's time and services were to be "computed at a rate of $285 per hour" from the date of the retainer to the date of discharge, and [*2]stated separately, "A sudden release by the client will result in a refund minus actual hours worked on this case." A separate paragraph left blank spaces for plaintiff's fee and the fee for his legal assistant. Defendant paid the full $7,500 fee to plaintiff. 
Plaintiff testified, among other things, that, upon being retained, he had created a 10-page "answering affidavit," which he intended to use as a tool to conduct the trial that was scheduled for June 25, 2018. On June 23, 2018, defendant sent plaintiff a text message, followed by a telephone call and an email on June 24, 2018, informing plaintiff that he and the mother of his child had decided to withdraw their respective petitions in the Family Court. Plaintiff advised defendant against withdrawing his petition and, apparently, continued to prepare for trial. On June 25th, the parties appeared in Family Court and defendant and the mother of his child withdrew their respective petitions. Plaintiff thereafter provided defendant with a timesheet that reflected 20 hours of time spent on defendant's matter, which, based on plaintiff's own computation of his time at $285 per hour, came to $5,700 that plaintiff maintained he was entitled to retain from the previously paid $7,500. Notwithstanding that computation, plaintiff refunded $2,000 to defendant rather than merely $1,800. 
Both parties testified concerning the services plaintiff had provided and about their understanding of the meaning of the retainer agreement. Plaintiff testified that, under the "capped fixed fee" arrangement, he could not charge defendant any additional fee no matter how much time he spent on defendant's matter, but that he was entitled to keep defendant's entire $7,500 fee even if, computed on an hourly basis, he had not earned that sum. Defendant differed in his understanding of the agreement, focusing on the hourly fee set forth therein, and asserted that, in any event, since the parties to the custody dispute had resolved their dispute without plaintiff's involvement, plaintiff had not earned the fee he had been paid. He also asserted that plaintiff's timesheet reflected excessive charges for some work, duplicative services, and attorney charges for nonlegal work.
Following the trial, upon determining that the retainer agreement was ambiguous, the Civil Court applied the "lodestar method" for the calculation of plaintiff's attorney's fee, and, on that basis, determined that plaintiff had been entitled to a fee of $3,391.50, based on his having performed 11.9 hours of legal work valued at $285 per hour. A judgment was entered on November 22, 2023, implicitly dismissing plaintiff's cause of action and awarding defendant a judgment on his counterclaim in the principal sum of $2,108.50, the difference between the fee to which plaintiff was entitled and the $5,500 net amount that defendant had paid to plaintiff. Prejudgment interest was assessed at the rate of 9% per annum. As limited by the brief, plaintiff appeals from so much of the judgment as awarded defendant $2,108.50 on his counterclaim, and additionally argues that, in any event, the court erred by including in the judgment 9% interest on the principal amount awarded.
A de novo review is "a review of the underlying dispute, as if an arbitration proceeding never occurred, thus contemplating a full adjudication, on the merits, of the parties' claims" (Sachs v Zito, 28 Misc 3d 567, 571 [Sup Ct, Orange County 2010]; see Matter of Greenberg [Ryder Truck Rental], 70 NY2d 573, 577 [1987]; Matter of New York City Tr. Auth. v Heights Med. Care P.C., 52 Misc 3d 1214[A], 2016 NY Slip Op 51153[U], *2-3 [Sup Ct, NY County 2016]). The record reflects that, although the trial judge initially misunderstood the nature of this de novo proceeding and erroneously reviewed the arbitrator's award (see Rules of Chief Admin [*3]of Cts [22 NYCRR] § 137.8 [c]), she had become informed of, and understood, the nature of the proceeding by the time the parties began their substantive testimony. The record also demonstrates that the parties were afforded the opportunity to present their respective claims at a full plenary trial and did not object to the court's review of the arbitration award. The decision following the trial reflects the court's independent consideration of the evidence. Thus, we find that the litigants in this instance were not prejudiced by the court's review of the arbitrator's award.
"It is axiomatic that the trial court 'has broad authority to control the courtroom, rule on the admission of evidence, elicit and clarify testimony, [and] expedite the proceedings' " (Nunez v New York City Health & Hosps. Corp. [Elmhurst Hosp. Ctr.], 110 AD3d 686, 688 [2013], quoting Messinger v Mount. Sinai Med. Ctr., 15 AD3d 189, 189 [2005]; see CPLR 4011; see also Molina v Goldberg, 231 AD3d 46, 51 [2024]; Dyszkiewicz v City of New York, 218 AD3d 546, 550 [2023]). "Furthermore, CPLR 2002 provides that '[a]n error in a ruling of the court shall be disregarded if a substantial right of a party is not prejudiced' " (Rosenberg v Jing Jiang, 153 AD3d 744, 745 [2017]). Plaintiff has failed to demonstrate that, by requiring the parties to show the relevance of exhibits, permitting the parties to testify in narrative form, and going off the record at various points in the trial, the trial court improvidently exercised its discretion, or that plaintiff was prejudiced by the trial court's procedures. In addition, contrary to plaintiff's contention, perceived errors by the trial court must be objected to in order to be preserved for appellate review (see CPLR 4017; see also Miles v R & M Appliance Sales, 26 NY2d 451, 454 [1970]; Zipkin v City of New York, 196 AD2d 865, 866 [1993]), and plaintiff failed to preserve any objections to the conduct of the trial; nor has he demonstrated that he would have prevailed but for the alleged errors (see Messinger v Mount Sinai Med. Ctr., 15 AD3d at 190).
By utilizing the $285 hourly fee set forth in the agreement in his timesheet and by refunding the sum of $2,000 prior to the commencement of this lawsuit, plaintiff initially implicitly acknowledged that he was only entitled to be paid on an hourly basis rather than according to the agreement's "capped fixed fee." Although plaintiff only sued for $199 and, without explanation, withdrew that claim at trial, plaintiff nevertheless changed his position and argued that he was entitled to be paid the full $7,500 "capped fixed fee." 
"The general rule that 'equivocal contracts will be construed against the drafters' is subject to particularly rigorous enforcement in the context of attorney-client retainer agreements" (Albunio v City of New York, 23 NY3d 65, 71 [2014], quoting Shaw v Manufacturers Hanover Trust Co., 68 NY2d 172, 176 [1986]; see also Merritt v Wynder, 212 AD3d 607 [2023]; Askari v McDermott, Will & Emery, LLP, 179 AD3d 127, 156 [2019]). The Civil Court found the retainer agreement to be ambiguous and proceeded to apply the "lodestar method"[FN1]
to determine [*4]that $285 was a reasonable hourly rate. However, the retainer agreement was only ambiguous as to which provision should apply to the facts herein: the $7,500 "capped fixed fee" or the $285 hourly fee. Interpreting the agreement against plaintiff, who was its drafter, we find that the provision for an hourly fee, as set forth in the agreement, should have been applied. As this was the same rate that the Civil Court applied using the "lodestar method," there is no need to disturb the Civil Court's determination of plaintiff's hourly rate at $285.
Plaintiff alternatively contends that, if the hourly $285 fee is applied instead of the "capped fixed fee," he is entitled to be compensated for the full 20 hours set forth on his timesheet, rather than the 11.9 hours allowed by the Civil Court. In its decision, the Civil Court detailed which of plaintiff's hours were properly compensable. Upon a review of the record, we find no basis to disturb the court's determination that plaintiff was entitled to be compensated for 11.9 hours at $285 per hour.
With respect to plaintiff's contention that the Civil Court erred by awarding prejudgment interest, we note that, in this action for a refund of attorney's fees, whether the judgment was based on breach of contract or quantum meruit, the award of prejudgment interest was mandatory (see CPLR 5001 [a]; see also Filler v Motta, 45 Misc 3d 41 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014]). Furthermore, the counterclaim alleged an obligation by a law firm, rather than a "natural person," and the subject of the counterclaim — the return of attorney fees — was not "primarily for personal, family or household purposes." Consequently, contrary to plaintiff's claim, defendant's counterclaim did not arise out of a "consumer debt," as defined in CPLR 5004 (b), for which 2% would be the applicable rate of interest, and, thus, the court properly imposed a 9% rate on the prejudgment interest (see CPLR 5004 [a]).
Accordingly, the judgment, insofar as appealed from, is affirmed.
TOUSSAINT, P.J., BUGGS and OTTLEY, JJ., concur.
ENTER:
Paul Kenny
Chief Clerk
Decision Date: April 4, 2025

Footnotes

Footnote 1: The "lodestar method" is one method for the determination of legal fees when the fees are not governed by a retainer agreement (see generally Sequa Corp. v GBJ Corp., 156 F3d 136, 148-149 [2d Cir 1998] [discussing the relationship between the assessment of fees using the quantum meruit or lodestar approach to the determination of fees]).