*390 OPINION OF THE COURT
Chief Judge DiFiore.
Under the Equal Access to Justice Act (CPLR art 86; hereinafter EAJA), in certain circumstances a court may award reasonable attorneys’ fees and costs to a prevailing plaintiff or petitioner in a suit against the State. In this appeal we are asked to decide whether the EAJA permits the award of attorneys’ fees and costs to a prevailing plaintiff in an action against the State under the Human Rights Law for sex discrimination in employment by a state agency. We conclude that it does.
I.
From 1980 through 1994, plaintiff Betty Kimmel worked as a New York State Trooper. During plaintiff’s tenure, she was assigned to several different police stations, often as the first woman to serve as a State Trooper at that station. In 1995, plaintiff filed a complaint alleging that she was subjected to discrimination, sexual harassment, and retaliation based on her sex and was exposed to a hostile work environment. She sought back pay, front pay, benefits, compensatory damages, reasonable attorneys’ fees, and an injunction restraining defendants from continuing their discriminatory practices. Defendants included the State of New York and the New York State Division of State Police (collectively, the State defendants), along with individual defendants not relevant to this appeal.
According to the complaint, and supporting exhibits, coworkers posted lewd cartoons portraying plaintiff naked and engaged in various sexual acts, suggested that plaintiff perform sexual acts on them and other coworkers and engaged in other harassing and hostile conduct, including a physical assault on plaintiff, which required emergency room treatment and doctor-ordered work leave.
Throughout the course of plaintiffs 14-year tenure, she made repeated complaints. In 1982, plaintiff made a sexual harassment claim under article 9 of the New York State Police Administrative Manual, but the harassment continued. When she was assaulted by a coworker in 1993, plaintiff requested a formal hearing, but was dissuaded from moving forward when her request to have a private attorney present was denied and her union representative suggested that she would not receive a fair hearing. Despite plaintiff’s efforts, neither her supervi *391 sors nor her Troop Commanders put a stop to her coworkers’ offensive behavior. Plaintiff repeatedly sought legal assistance, but had difficulty finding an attorney to take her case.
In 1995, plaintiff commenced this litigation. The State defendants denied that the agency had engaged in any wrongdoing whatsoever, and asserted as a defense that “[a] 11 actions taken by the defendants were official acts taken in the exercise of their discretion.” Over the next 10 years, the State defendants repeatedly engaged in what the Appellate Division characterized as “obstructionist and delaying tactics” (261 AD2d 843, 845 [4th Dept 1999]), including their failure to comply with basic discovery requests. Eventually, based on their continued defiance of court orders, the Appellate Division struck the State defendants’ answers (see 286 AD2d 881, 883 [4th Dept 2001]).
When the case went to trial over a decade after the complaint was filed, plaintiff prevailed and received a jury award of over $700,000. The jury award included past lost earnings of $160,000; past lost retirement earnings of $60,000; future lost retirement earnings of $491,000; and past pain and suffering of $87,000. Plaintiff’s current and former counsel then sought attorneys’ fees and costs under the EAJA.
Supreme Court held that attorneys’ fees and costs could not be awarded in this action because the EAJA did not apply “where a plaintiff has recovered compensatory damages for tor-tious acts of the State and its employees.”
The Appellate Division reversed in a split decision, holding that a plain reading of the EAJA and its definition of the term “action” compelled the conclusion that the EAJA applies to this case (76 AD3d 188, 191-194 [4th Dept 2010]). Although the Appellate Division noted that resort to the legislative history was unnecessary, it nonetheless observed that the legislative history supported its position. The Court concluded that if the legislature had not intended the EAJA to cover this type of case, then the legislature, and not the Court, was the appropriate body to resolve the issue (see 76 AD3d at 196).
The dissent would have concluded that “the ‘spirit and purpose of the legislation,’ as gleaned from the statutory context and the legislative history,” demonstrated that the EAJA should be applied only to review of administrative actions (id. at 199 [citation omitted]).
*392 Supreme Court subsequently entered a final judgment awarding plaintiff and her former counsel attorneys’ fees and expenses. Defendants now appeal as of right pursuant to CPLR 5601 (d), bringing the prior nonfinal Appellate Division order up for our review.
II.
We look “first to the plain language of the statute [ ] as the best evidence of legislative intent” (Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review, 3 NY3d 563, 568 [2004]). New York’s EAJA is located in article 86 of the CPLR. CPLR 8601 (a) provides in relevant part:
“except as otherwise specifically provided by statute, a court shall award to a prevailing party, other than the state, fees and other expenses incurred by such party in any civil action brought against the state, unless the court finds that the position of the state was substantially justified or that special circumstances make an award unjust” (emphasis added).
CPLR 8602 defines the term “Action” as “any civil action or proceeding brought to seek judicial review of an action of the state as defined in subdivision (g) of this section, including an appellate proceeding, but does not include an action brought in the court of claims” (CPLR 8602 [a]). Subdivision (g) defines “State” as “the state or any of its agencies or any of its officials acting in his or her official capacity” (CPLR 8602 [g]).
Thus, there are only two express limitations on the expansive term “any civil action.” First, in CPLR 8601 (a), the phrase “except as otherwise specifically provided by statute” makes clear that the EAJA applies “only where another statute does not specifically provide for counsel fees” (Matter of Beechwood Restorative Care Ctr. v Signor, 5 NY3d 435, 443 [2005]). It is undisputed that the Human Rights Law did not provide attorneys’ fees at the time this suit was brought and was not amended to provide such fees until 2015 (see Executive Law § 297, as amended by L 2015, ch 364).[1] Second, in CPLR 8602 *393 (a), the definition of “action” excludes actions commenced in the Court of Claims. This case was brought in Supreme Court pursuant to Executive Law § 297 (9), not in the Court of Claims. Accordingly, neither limitation on “any civil action” applies here.
We have repeatedly held that “the word ‘any’ means ‘all’ or ‘every’ and imports no limitation” (Zion v Kurtz, 50 NY2d 92, 104 [1980] [emphasis added]). Ignoring both that precedent and the “or” in the statutory definition {“any civil action or proceeding brought to seek judicial review” [emphasis added]), the State defendants argue that the term “judicial review” in the definition of “action” places another express limitation on “any civil action,” thereby excluding cases, like this one, that seek compensatory damages. According to the State defendants, the term judicial review modifies both “any civil action” and “proceeding” and, therefore, restricts EAJA awards to prevailing parties in CPLR article 78 proceedings, as well as a limited subset of civil actions seeking review of a state agency’s administrative actions. We disagree.
In interpreting the term “action” we are guided by the principle that a statute should be construed to avoid rendering any of its provisions superfluous (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 587 [1998]). Neither article 78 proceedings nor declaratory judgment actions against the State can be brought in the Court of Claims (see CPLR 3001, 7804; cf. Court of Claims Act § 9 [9-a]), instead they must be brought in Supreme Court. Likewise, the Court of Claims does not have jurisdiction over actions for injunctive relief (see Court of Claims Act § 9; Psaty v Duryea, 306 NY 413, 416 [1954]). Under the State defendants’ interpretation, therefore, the statutory exclusion for “an action brought in the court of claims” would have no meaning (CPLR 8602 [a]).[2]
Additionally, before the EAJA was enacted, we held that Human Rights Law claims seeking monetary relief against the *394 State could be brought in Supreme Court (see Koerner v State of N.Y., Pilgrim Psychiatric Ctr., 62 NY2d 442, 449 [1984]). When the legislature enacted the EAJA five years later, it is presumed to have known of our decision (see Arbegast v Board of Educ. of S. New Berlin Cent. School, 65 NY2d 161, 169 [1985]); thus, the Court of Claims exclusion was not intended to exclude Human Rights Law claims from eligibility for an EAJA award. Indeed, in Koerner, we observed that discrimination is “all the more invidious . . . when it is practiced by the State” (62 NY2d at 448), providing the legislature with all the more reason to permit Human Rights Law claims such as this one to be eligible for an award of attorneys’ fees under the EAJA.
Other principles of statutory interpretation guide our reading as well. Where the legislature has addressed a subject and provided specific exceptions to a general rule — as it has done here — the maxim expressio unius est exclusio alterius applies (see McKinney’s Cons Laws of NY, Book 1, Statutes § 240 at 412-413 [“where a statute creates provisos or exceptions as to certain matters the inclusion of such provisos or exceptions is generally considered to deny the existence of others not mentioned”]). The State defendants ask us to create yet another exception to the statutory term “any civil action.” To do so, however, would give effect to an assumed legislative intent by judicial construction.
The State defendants offer an additional explanation for how the term “judicial review” impacts the phrase “any civil action or proceeding brought to seek judicial review of an action of the state” (CPLR 8602 [a]). They argue that the term “judicial review” is used to clarify that there can be no fees awarded with respect to agency proceedings that take place before the aggrieved individual, small business, or not-for-profit entity goes into court to appeal — by way of “judicial review” (i.e., court review) — an adverse agency ruling. Indeed, both the State defendants and plaintiff’s former counsel agree that the term “judicial review” was used to clarify that EAJA fee awards are not available in connection with administrative agency proceedings that precede court review (see e.g. Matter of Greer v Wing, 95 NY2d 676, 680 [2001]). We agree. By interpreting “judicial review” in this way — to modify solely the term “proceeding”— this portion of the definition of “action” is harmonized with the *395 rest of the definition and the Court of Claims exclusion is not rendered meaningless.[3]
Our conclusion is also consistent with the EAJA’s statutory scheme. CPLR 8600 provides that the “intent” of the EAJA was to create a mechanism comparable to that in the federal Equal Access to Justice Act (federal EAJA), which is set forth in 28 USC § 2412 (d). The federal EAJA provides:
“Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust” (28 USC § 2412 [d] [1] [A] [emphasis added]).
The federal EAJA undisputedly applies to “any civil action” brought against the United States except for those sounding in tort. In our statute, the Court of Claims exclusion is the equivalent of the federal exclusion of tort actions, since tort claims against the State can only be brought in the Court of Claims.[4] Likewise, our EAJA’s reference to a “proceeding brought to seek judicial review” was meant to mirror similar language in the federal EAJA. The dissent ignores the fact that the phrase *396 in the federal EAJA “including proceedings for judicial review of agency action” was not even in the federal EAJA when it was first enacted, but was added in 1985 to overrule a federal decision, which held that the federal EAJA did not apply to court review of administrative agency rulings (see Gregory C. Sisk, The Essentials of the Equal Access to Justice Act: Court Awards of Attorney’s Fees for Unreasonable Government Conduct [Part One], 55 La L Rev 217, 230 and n 75 [Nov. 1994], citing to National Wildlife Fedn. v Federal Energy Regulatory Commn., 870 F2d 542, 543 [9th Cir 1989]). Indeed, the addition of this phrase in the federal EAJA was intended to clarify the expansiveness of the statute’s coverage by acknowledging that agency rulings reviewed by the courts, as well as all other civil actions with the exception of tort actions, were eligible for awards. Thus, our reading of “proceeding brought to seek judicial review” in the EAJA is entirely consistent with its federal counterpart.
Further, at the time our EAJA was passed, federal courts in New York had already held that the federal EAJA was a remedial statute (see Barriger v Bowen, 673 F Supp 1167, 1169 [ND NY 1987]; Environmental Defense Fund, Inc. v Watt, 554 F Supp 36, 41 [ED NY 1982]).[5] New York’s EAJA is a remedial statute as well. As such, it should be “liberally construed to carry out the reforms intended and to promote justice” (McKinney’s Cons Laws of NY, Book 1, Statutes § 321), and “interpreted broadly to accomplish [its] goals” (People v Brown, 25 NY3d 247, 251 [2015]; see also Matter of Scanlan v Buffalo Pub. School Sys., 90 NY2d 662, 676 [1997]; Post v 120 E. End Ave. Corp., 62 NY2d 19, 24 [1984]).[6]
The purpose of the EAJA is “[t]o encourage individuals, small businesses and not-for-profit corporations to challenge state action when it lacks substantial justification by allowing them to recover fees and litigation expenses” (Assembly Mem, Bill Jacket, L 1989, ch 770 at 10 [emphasis added]). The State de *397 fendants’ restrictive interpretation of “any civil action” is inconsistent with these goals. Moreover, we have held that limitations should not be read into such remedial statutes “unless the limitation [s] proposed [are] ‘clearly expressed’ ” (Brown, 25 NY3d at 251, quoting People v Sosa, 18 NY3d 436, 440-441 [2012]). As noted, there are only two clear exclusions from the term “any civil action” and the State defendants’ proposed limitation for cases seeking monetary damages is not one of them.

III.

The legislative history from 1989, when the EAJA became law, demonstrates that the EAJA was “targeted at those businesses and individuals . . . who often lack the resources necessary to vindicate their civil and legal rights” (Letter from New York Lawyers for the Public Interest, Inc., Bill Jacket, L 1989, ch 770 at 46). Although the plain language of the statute provides the best evidence of legislative intent, “the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear [because] [t]he primary goal of the court in interpreting a statute is to determine and implement the Legislature’s intent” (Matter of Tompkins County Support Collection Unit v Chamberlin, 99 NY2d 328, 335 [2003] [internal quotation marks and citations omitted]).
Here, the legislative history also leads to the conclusion that “any civil action” means what it says, subject to the express exclusions in the statute. While article 78 proceedings were undoubtedly a focus of interest in the bill, and some portions of the legislative history reflect this, the legislative history also supports our conclusion that the statute permits an award of attorneys’ fees and costs to the plaintiff in this case.
Notably, the 1989 bill that subsequently was codified as CPLR article 86 differed from earlier versions of the statute— all vetoed by the governor — in important ways. Most of the earlier versions applied only to small businesses and not individuals; one excluded claims brought by “state employees”; one defined “judicial review” as “an appeal of agency action”; and, as the governor’s vetoes of these earlier bills indicated, all failed to establish a policy of providing New York’s poor with access to the courts (see e.g. Governor’s Veto Message No. 71 of 1983, 1983 NY Legis Ann at 460-461). The legislature made very different choices when it drafted and passed the EAJA as we now know it: individual plaintiffs and petitioners are *398 covered with no exclusion for state employees; there is no limiting definition of “judicial review”; and the clear intent is to advance individuals’ “civil rights” (the very words used in supporting materials in the bill jacket) as well as other rights. We conclude that the earlier bills shed light on the critical differences that make the EAJA that did pass a true vehicle for improved access to justice for those who would otherwise be unable to afford a lengthy legal battle with a state actor.
Even the legislative history cited by the dissent supports this case’s eligibility for fees under the EAJA. For example, in Governor Mario Cuomo’s memorandum approving the bill, the governor commented that the statute authorized a fee award to “certain plaintiffs or petitioners who prevail in litigation reviewing State agency action or inaction when the State’s position in the case is not substantially justified” and that its purpose was to “improv[e] access to justice for individuals and businesses who may not have the resources to sustain a long legal battle” against the State (Governor’s Mem approving L 1989, ch 770, 1989 Legis Ann at 335-336). That, of course, was the situation here. The State defendants defended the agency’s inaction in failing to address rampant sex discrimination in its ranks on the ground that the agency’s official acts were within its discretion. At the same time, their dilatory and obstructive conduct in the litigation seemed designed to wear down plaintiff and exhaust her resources.
The dissent concludes that “[w]ithin all the legislative history over the course of the decade in which the EAJA was contemplated and developed, there is no discussion of a drastic change in the statute’s purpose or applicability from its earlier incarnations” (dissenting op at 410-411). This is incorrect. The Report of the Association of the Bar of the City of New York described the change from earlier versions in some detail:
“Bills denominated ‘Equal Access to Justice’ Acts have been passed by both houses of the state legislature during the past several years, only to be vetoed by the Governor. Those bills, however, were not truly Equal Access to Justice Acts because, although they assisted small businesses regulated by state agencies, they failed to confer any benefits on low income individuals seeking to enforce civil and legal rights through the courts. As Governor Cuo-mo’s 1983 veto message stated, ‘This bill does not *399 establish a policy of enabling the poor to gain access to the judicial forum.’ The EAJA in its current form would be the first bill to reach the Governor’s desk that directly promotes equal access to justice by significantly lowering economic barriers that currently prevent many individuals from contesting irrational an[d] illegal State government action” (Assn of the Bar of the City of NY, Report on Legislation, Bill Jacket, L 1989, ch 770 at 57).
Additionally, other proponents of the EAJA, such as the State Bar Association, praised the 1989 bill as “designed to accomplish precisely what its title suggests — enhanced access to the courts for those who historically have been unable to make use of the judicial process simply because they lacked financial resources” (Letter from NY St Bar Assn, Bill Jacket, L 1989, ch 770 at 48). These proponents further heralded its passage as timely given the then-recent findings of the Marrero Committee (see id. at 49), which was constituted “to study the extent of the unmet need for civil legal services among the poor in New York State and to recommend ways to improve the availability of those services” (Victor Marrero, Committee to Improve the Availability of Legal Services — Final Report to the Chief Judge of the State of New York, 19 Hofstra L Rev 755, 756 [Summer 1991]). The Committee’s Preliminary Report, which was issued while the EAJA was under consideration, concluded that “the critical problem of underrepresentation of the poor . . . ‘jeopardize[d] both the welfare of poor persons and the legitimacy of the legal system itself ” (Letter from NY St Bar Assn, Bill Jacket, L 1989, ch 770 at 49, quoting Marrero Committee Preliminary Report).
Moreover, as noted in the governor’s signing statement, the 1989 EAJA differed from EAJA bills he had vetoed in the past because, in addition to opening up the EAJA to individuals to vindicate their civil and other legal rights, it had “necessary safeguards” absent from prior versions of the bill (Governor’s Mem approving L 1989, ch 770, Bill Jacket, L 1989, ch 770 at 20, 1989 Legis Ann at 336). Specifically, the governor noted the “appropriate limits” on the classes of individuals and entities that can seek EAJA awards, including the $50,000 net worth requirement (id.).[7] The governor also observed that the 1989 version limited fees and costs to those cases where the State’s *400 position was not “ ‘substantially justified’ ” and to an amount that was deemed “ ‘reasonable’ ” (id. at 20). Thus, our interpretation does not “open the floodgates” since these various restrictions keep them firmly shut to all but the neediest and most deserving plaintiffs and petitioners.
In discussing these restrictive “necessary safeguards” placed on EAJA awards, the governor referred to the federal EAJA and cited the differences between the federal statute and New York’s EAJA. The federal EAJA undeniably applies to all civil actions, except those where costs and fees are already provided for by another statute and tort actions. If the governor understood the EAJA to apply to a subset of civil actions that was more limited than the federal statute’s coverage, he surely would have noted it in discussing these important restrictions, given the emphasis placed on safeguards that would lessen the financial burden on the State. The governor’s failure to mention any such limitation in the 1989 bill provides further support for the conclusion that there was no such limitation.
Several other proponents and opponents of the bill observed that the EAJA was modeled after the federal EAJA (Bill Jacket, L 1989, ch 770 at 11, 23, 25, 27, 39). Yet not one stated that the EAJA excluded virtually all civil actions — as the State argues it does. To the contrary, several of the submissions in the Bill Jacket describe the EAJA as applicable to all civil actions brought against the State with the exception of those commenced in the Court of Claims or tort actions, consistent with the federal EAJA (see Bill Jacket, L 1989, ch 770 at 49, 53). Similarly, a report from the Association of the Bar of the City of New York stated that the EAJA applied to “prevailing parties in civil proceedings, with the exception of tort actions, against the State” (id. at 55).
Finally, attorneys’ fees and costs are now specifically provided for under the Human Rights Law in cases of housing discrimination and in cases of sex discrimination in credit or employment (L 2015, ch 364, § 1). The 2015 amendment reflects the legislature’s acknowledgment that fee-shifting provisions are appropriate in the area of Human Rights Law violations. The amendment also means that attorneys’ fees in certain civil actions and proceedings brought under the Human Rights Law *401 alleging sex discrimination will no longer be subject to the EA-JA’s limiting requirements but to the separate requirements set forth in the Human Rights Law itself. Contrary to the dissent’s position, the enactment of the 2015 amendment does not mean that litigants prior to that time had no recourse to EAJA; rather, the amendment allows for attorneys’ fees without the limiting requirements that EAJA imposes.
IV.
In sum, the plain language, legislative history and remedial nature of the EAJA together demonstrate that this civil action is eligible for an award of attorneys’ fees. We hold that for cases commenced before the effective date of the 2015 amendment to the Human Rights Law, the EAJA permits the award of attorneys’ fees and costs to a prevailing plaintiff in an action against the State under the Human Rights Law for sex discrimination in employment by a state agency. The plain language of the statute, which is supported by the legislative history, compels the conclusion that “any civil action” encompasses cases brought under the Human Rights Law. It is not for this Court to engraft limitations onto the plain language of the statute. Indeed, “[t]his Court should be very cautious in interpreting statutes based on what it views as a better choice of words when confronted with an explicit choice made by the Legislature” (Matter of Orens v Novello, 99 NY2d 180, 190 [2002]). We agree with the Appellate Division that we may “not legislate under the guise of interpretation and, if application of the EAJA to this action is an unintended result of the plain language of the statute, then that is a consequence best left to the Legislature to evaluate and, if necessary, resolve” (76 AD3d at 196 [internal quotation marks and citations omitted]).
Accordingly, the judgment appealed from, and order of the Appellate Division insofar as brought up for review, should be affirmed, with costs.

. Although they do not limit the phrase “any civil action,” other provisions in the EAJA place limitations on fee awards. CPLR 8601 (a) provides that fees will not be awarded when the State’s position is “substantially justified” or when “special circumstances make an award unjust.” Individual plaintiffs and petitioners must have a net worth of $50,000 or less at the time the case was commenced, excluding the value of their principal residences, in order to be eligible for fees (see CPLR 8602 [d]). The lower *393 courts determined that plaintiff met all of these strict requirements, and their applicability is not before us in this appeal.

. The dissent argues that the statutory exclusion for “an action brought in the court of claims” is superfluous in any event because the Court of Claims Act already bars attorneys’ fees (see dissenting op at 406-407). But the EAJA’s Court of Claims exclusion was necessary and avoided any suggestion that EAJA’s attorneys’ fees provision conflicted with or abrogated the Court of Claims bar.

. Notably, the State defendants concede elsewhere that “judicial review” is often given a broad definition. For example, they cite Black’s Law Dictionary’s definition, which includes “[a] court’s power to review the actions of other branches ... of government” (Black’s Law Dictionary 976 [10th ed 2014]). Our decision in Matter of Pan Am. World Airways v New York State Human Rights Appeal Bd. (61 NY2d 542, 548 [1984]), likewise uses the term “judicial review” to mean review by a court without reference to an agency decision — indeed, we pointed out in that case that the Human Rights Law expressly permits either administrative review through the Human Rights Division or, as an alternative, “judicial review.”

. As the parties agree, and contrary to the Supreme Court’s holding, claims brought under the Human Rights Law are not tort claims (Margerum v City of Buffalo, 24 NY3d 721, 730 [2015] [concluding no notice of claim requirement applies because “(h)uman rights claims are not tort actions under (General Municipal Law §) 50-e and are not personal injury, wrongful death, or damage to personal property claims under (General Municipal Law §) 50-i”]).

. Additionally, since the federal EAJA’s passage, other federal courts have consistently concluded that it is a remedial statute (see e.g. Phillips v Shinseki, 581 F3d 1358, 1367 [Fed Cir 2009], citing Scarborough v Principi, 541 US 401, 406-407 [2004]).

. Fee-shifting statutes that provide fees to the prevailing party in derogation of the common-law rule are generally interpreted narrowly (see e.g. Vucetovic v Epsom Downs, Inc., 10 NY3d 517, 521 [2008]). However, when interpreting a fee-shifting statute that is remedial in nature, we have held that the statute may nonetheless be interpreted broadly (see Graham Ct. Owners Corp. v Taylor, 24 NY3d 742, 750-751 [2015]).

. New York’s $50,000 requirement was the most restrictive of any of the other 29 states that approved state EAJAs around this time, many of which *400 placed no restrictions on an individual’s wealth (see Susan M. Olson, How Much Access to Justice from State “Equal Access to Justice Acts”?, 71 Chi-Kent L Rev 547, 561-562 [1995]).