Matter of Markey v Tietz (2025 NY Slip Op 04689)

Matter of Markey v Tietz

2025 NY Slip Op 04689

Decided on August 14, 2025

Appellate Division, Third Department

Aarons, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 14, 2025

CV-24-1057

[*1]In the Matter of Peter Markey, Appellant,
v
Daniel W. Tietz, as Commissioner of the Office of Temporary and Disability Assistance, Respondent.

Calendar Date:May 28, 2025

Before: Aarons, J.P., Lynch, Ceresia, McShan and Powers, JJ.

Orrick, Herrington & Sutcliffe LLP, New York City (Parth Sagdeo of Orrick, Herrington & Sutcliffe LLP, Menlo Park, California, of counsel, admitted pro hac vice), for appellant.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondent.

Aarons, J.P.
Appeal from an order of the Supreme Court (Gerald Connolly, J.), entered June 7, 2024 in Albany County, which, in a proceeding pursuant to CPLR article 78, denied petitioner's motion for counsel fees.
Pursuant to the New York State Equal Access to Justice Act (CPLR art 86 [hereinafter the state EAJA]), "a court shall award to a prevailing party, other than the state, fees and other expenses incurred by such party in any civil action brought against the state, unless the court finds that the position of the state was substantially justified or that special circumstances make an award unjust" (CPLR 8601 [a]). "The purpose of the [state] EAJA is to encourage individuals, small businesses and not-for-profit corporations to challenge state action when it lacks substantial justification by allowing them to recover fees and litigation expenses" (Kimmel v State of New York, 29 NY3d 386, 396 [2017] [internal quotation marks, brackets, emphasis and citation omitted]). To carry out this purpose, the Legislature created a mechanism to recover counsel fees that is "similar" (id.) to the federal Equal Access to Justice Act (28 USC § 2412 [hereinafter the federal EAJA]) and "the significant body of case law that has evolved thereunder" (CPLR 8600).
Petitioner, a resident of New York County, seeks counsel fees under the state EAJA in connection with this CPLR article 78 proceeding that he commenced to review a determination of the Office of Temporary and Disability Assistance (hereinafter OTDA) denying his application for rental assistance under the COVID-19 Emergency Rental Assistance Program (L 2021, ch 56, § 1, part BB, § 1, subpart A, as amended by L 2021, ch 417 [hereinafter ERAP]). Before answering the petition, OTDA rescinded its denial, determined petitioner was eligible for ERAP and granted his application for rental assistance and also awarded utility arrears. Supreme Court then dismissed the proceeding as moot. Because the relief was voluntarily granted by OTDA rather than on the merits of petitioner's challenge, the court denied his motion for counsel fees as he was not a prevailing party as required by the state EAJA. Petitioner appeals.
There are three requirements for a party to successfully recover counsel fees under the state EAJA: (1) the party must be a prevailing party, (2) the position of the State — i.e., "the act, acts or failure to act from which judicial review is sought" (CPLR 8602 [e]) — may not be substantially justified, and (3) special circumstances may not render the award of counsel fees unjust (see CPLR 8601 [a]; 8602 [f]).[FN1] Under the state EAJA, a prevailing party is a "plaintiff or petitioner in the civil action against the state who prevails in whole or in substantial part where such party and the [S]tate prevail upon separate issues" (CPLR 8602 [f]). Accordingly, counsel fees are available to a party with limited financial resources who has sued to challenge unreasonable governmental action and "succeeded in acquiring a substantial [*2]part of the relief sought in the lawsuit" (Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d 346, 355 [1995]; see CPLR 8602 [d], [f]).
Petitioner's claim, however, is precluded by our decision in Matter of Clarke v Annucci (190 AD3d 1245, 1247 [3d Dept 2021], lv dismissed 37 NY3d 935 [2021]), in which we held that a party does not prevail under the state EAJA based upon the catalyst theory, which is when "the desired result is achieved because the proceeding brought about the voluntary change in the respondent's conduct" (id. at 1246 n; see Matter of Criss v New York State Dept. of Health, 192 AD3d 1545, 1545 [4th Dept 2021]). The sole basis for petitioner's counsel fee application is the catalyst theory: petitioner contends that he is a prevailing party because his challenge to the denial of his ERAP application spurred OTDA to grant him all the relief he sought in the litigation.[FN2]
Insisting that Clarke was wrongly decided, petitioner invites us to overrule it and recognize the catalyst theory under the state EAJA (see Matter of Jaquez v Tietz, 237 AD3d 433, 434 [1st Dept 2025]; Matter of Liu v Ruiz, 200 AD3d 68, 74 [1st Dept 2021], lv dismissed 38 NY3d 1124 [2022]; Matter of Solla v Berlin, 106 AD3d 80, 83-91 [1st Dept 2013], revd on other grounds 24 NY3d 1192 [2015]). "Even under the most flexible version of the doctrine of stare decisis, prior decisions should not be overruled unless a compelling justification exists for such a drastic step" (Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d 89, 96 [2023] [internal quotation marks, brackets, ellipsis and citations omitted]). Moreover, "[p]recedents involving statutory interpretation are entitled to great stability" (People v Hobson, 39 NY2d 479, 489 [1976]).
Although "legal questions, once settled, should not be reexamined every time they are presented" (People v Bing, 76 NY2d 331, 338 [1990]), we accept petitioner's invitation to revisit Clarke. There, an incarcerated individual brought a CPLR article 78 proceeding to annul the disposition of a disciplinary hearing, but that challenge was rendered moot when the agency administratively reversed the disposition before judicial review was complete (see Matter of Clarke v Annucci, 190 AD3d at 1245-1246). We denied the individual's application for counsel fees, finding it persuasive that "the United States Supreme Court has clearly held that a voluntary resolution of a matter lacks the necessary judicial imprimatur to warrant an award of counsel fees" (id. at 1247 [internal quotation marks, brackets and citations omitted]).
Indeed, we had already applied that rule in Matter of Vetter v Board of Educ., Ravena-Coeymans-Selkirk Cent. School Dist. (53 AD3d 847, 849 [3d Dept 2008], mod on other grounds 14 NY3d 729 [2010]), in which the movant sought counsel fees under the federal Civil Rights Attorney's Fees Awards Act of 1976 (see 42 USC § 1988; Hensley v Eckerhart, 461 US 424, 429 [1983]). As such, Vetter was controlled by Buckhannon [*3]Board & Care Home, Inc. v West Virginia Dept. of Health and Human Resources (532 US 598 [2001]), which rejected the catalyst theory because the term prevailing party as used in federal fee-shifting statutes is a term of art that implies a "judicially sanctioned change in the legal relationship of the parties" (id. at 605; see Lackey v Stinnie, 604 US ___, ___, 145 S Ct 659, 668 [2025]). Consequently, courts applying the federal EAJA stopped recognizing the catalyst theory after Buckhannon was handed down in 2001 (see e.g. Ma v Chertoff, 547 F3d 342, 344 [2d Cir 2008]; Elliott v United States Dept. of State, 122 F Supp 3d 39, 43 [SD NY 2015]). Courts applying the state EAJA followed suit (see e.g. Matter of Auguste v Hammons, 285 AD2d 417, 418 [1st Dept 2001]; see also Matter of Gonzalez v New York State Dept. of Corr. & Community Supervision, 152 AD3d 680, 683 [2d Dept 2017] [relying on authorities that, in turn, rely on Buckhannon]), and Clarke is this Court's contribution to that canon.
The First Department also declined to recognize the catalyst theory until its 2013 decision Matter of Solla v Berlin (106 AD3d at 89). In Solla, the First Department overruled its own rejection of the catalyst theory 12 years earlier, concluding that its prior decision had overemphasized Buckhannon with no attention paid to the differences between the state EAJA and federal EAJA (id. at 82; see Matter of Auguste v Hammons, 285 AD2d at 418). Clarke's reasoning similarly relies heavily on Buckhannon's logic without engaging with the text of the state EAJA (see Matter of Clarke v Annucci, 190 AD3d at 1246-1247, quoting Swergold v Cuomo, 99 AD3d 1141, 1145 [3d Dept 2012], lv denied 20 NY3d 859 [2013], and citing Matter of Gonzalez v New York State Dept. of Corr. & Community Supervision, 152 AD3d at 683).
Upon reflection, a strict application of Buckhannon is incompatible with the state EAJA's text. As an initial matter, the Legislature wrote a statutory definition of "prevailing party" into the state EAJA, so we must interpret that definition rather than construct one as Buckhannon did.[FN3] In addition, a party must apply for counsel fees "within [30] days of final judgment in the action" (CPLR 8601 [b]). The federal EAJA defines "final judgment" as either a judgment or an "order of settlement" (28 USC § 2412 [d] [2] [G] [emphasis added]), and therefore the federal EAJA does not conflict with Buckhannon's rule requiring a judicially sanctioned outcome. Under the state EAJA, however, " '[f]inal judgment' means a judgment that is final and not appealable, and settlement" (CPLR 8602 [c]). A settlement agreement reduced to a writing subscribed by the parties to be bound is enforceable even without judicial imprimatur (see CPLR 2104; Matter of Pittsford Canalside Props., LLC v Village of Pittsford Zoning Bd. of Appeals, 181 AD3d 1235, 1237 [4th Dept 2020]; Glenville Police Benevolent Assn. v Mosher, 31 AD3d 874, 875 n [3d Dept 2006]). The fact that the federal EAJA provides [*4]the model for the state EAJA supports a presumption that the Legislature made a conscious choice to change "order of settlement" (28 USC § 2412 [d] [2] [G]) to "settlement" (CPLR 8602 [c]; see Matter of Doe v City of Schenectady, 84 AD3d 1455, 1458 [3d Dept 2011]). That choice is negated by "the holding in Buckhannon that even a voluntary relinquishment of the State's position must be judicially sanctioned" (Matter of Solla v Berlin, 106 AD3d at 89; see Assembly Mem in Support of 2009 NY Assembly Bill 7395 [observing that, after Buckhannon, "the courts no longer find these litigants to be the 'prevailing party' entitled to attorney's fees where the case settles at any time prior to a final judgment"]).
Having persuaded us to depart from Clarke, we turn to petitioner's contention that the state EAJA reaches a party claiming to have prevailed in litigation against the State by catalyzing voluntary administrative action. "The primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature" (Riley v County of Broome, 95 NY2d 455, 463 [2000] [internal quotation marks and citation omitted]; see Matter of Shannon, 25 NY3d 345, 351 [2015]). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]). "The plain meaning of the language of a statute must be interpreted in the light of conditions existing at the time of its passage and construed as the courts would have construed it soon after its passage" (People v Litto, 8 NY3d 692, 697 [2007] [internal quotation marks and citations omitted]; accord Matter of Affiliated Brookhaven Civic Orgs., Inc. v Planning Bd. of the Town of Brookhaven, 209 AD3d 854, 856 [2d Dept 2022]). Further, "the legislative history of an enactment may also be relevant and is not to be ignored, even if [the] words [are] clear" (Riley v County of Broome, 95 NY2d at 463 [internal quotation marks and citation omitted]). "We are also guided in our analysis by the familiar principle that a statute must be construed as a whole and that its various sections must be considered together and with reference to each other" (Matter of New York County Lawyers' Assn. v Bloomberg, 19 NY3d 712, 721 [2012] [internal quotation marks, ellipsis and citation omitted]; accord Matter of Shannon, 25 NY3d at 351).
In plain language, to prevail means to win (see e.g. Letter from Assemblymember Robin Schimminger, Sept. 21, 1989, Bill Jacket, L 1989, ch 770 at 6; Webster's Ninth New Collegiate Dictionary 932 [Merriam-Webster 1983], prevail ["to gain ascendancy through strength or superiority: triumph"]).[FN4] In this respect, the statute uses the term "prevail" to define two types of prevailing parties: (1) the party who "[wins] in whole" and (2) the party who wins "in substantial part where [*5]such party and the [S]tate [win on] separate issues" (CPLR 8602 [f]).[FN5] Six years after the state EAJA was enacted, the Court of Appeals held in Matter of New York State Clinical Lab. Assn. v Kaladjian that a party may demonstrate it prevailed in "substantial part" by "identifying the original goals of the litigation and by demonstrating the comparative substantiality of the relief actually obtained" (85 NY2d at 355). There, the challenger sought annulment of an agency determination on two constitutional grounds and a declaration that the agency's reading of its regulation was arbitrary and capricious. The agency won on the constitutional grounds and the challenger won only on the third ground, but that win on the merits did not accomplish the main goal of the litigation: annulling the agency's adverse determination; thus, the challenger was not a prevailing party under the state EAJA (see id.).
Though Kaladjian does not address the statutory prerequisite that the party and the State "prevail upon separate issues" (CPLR 8602 [f]), its reasoning equates "issues" with the "grounds" for relief asserted by the party (Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d at 355). Such reasoning implies that the litigation results in an outcome on the merits of the party's grounds for relief.
Given that Kaladjian defines "in substantial part" just by the degree of relief obtained, a party "who prevails in whole" must be a party who obtains all of the relief requested, but it is unclear whether the prerequisite to win on "issues" applies to a wholly prevailing party (CPLR 8602 [f]). The relevant language directly modifies a party "who prevails . . . in substantial part," and therefore could be read as applying only in that circumstance (CPLR 8602 [f]). On the other hand, the dual objects of "prevails" in the same sentence — to win the relief sought and to win on issues — could imply that a party "who prevails in whole" is a party who wins all the relief sought and wins on the merits of the issues that dispose of the litigation (CPLR 8602 [f] [emphasis added]; cf. Matter of Kese Indus. v Roslyn Torah Found., 15 NY3d 485, 491 [2010]). The two reasonable interpretations of the same language render it ambiguous (see Matter of Nichols v Bacon, 175 AD3d 831, 833 [3d Dept 2019]; cf. Matter of New York State Dept. of Labor [Unemployment Ins. Appeal Bd.] v New York State Div. of Human Rights, 71 AD3d 1234, 1237 [3d Dept 2010], lv denied 15 NY3d 714 [2010]).
When confronted with ambiguous language in a statute, we look beyond the words to consider the statute's purpose, "the history of the times, the circumstances surrounding the statute's passage, and attempted amendments" (Riley v County of Broome, 95 NY2d at 464 [internal quotation marks, ellipsis and citation omitted]; see Matter of NYC Org. of Pub. Serv. Retirees, Inc. v Campion, 43 NY3d 228, 235 [2024]; People v Litto, 8 NY3d at 697). Additionally, "we ordinarily interpret the meaning of an ambiguous [*6]word in relation to the meanings of adjacent words" (Matter of Kese Indus. v Roslyn Torah Found., 15 NY3d at 491). To the extent the state EAJA is modeled on the federal EAJA, "[f]ederal case law can provide useful guidance" (Albunio v City of New York, 23 NY3d 65, 73 [2014]; see CPLR 8600).
As the Court of Appeals stated in Kimmel v State of New York (29 NY3d at 396), the state EAJA is a remedial statute. While Kimmel acknowledges that fee-shifting statutes generally receive a narrow construction, a fee-shifting statute "that is remedial in nature . . . may nonetheless be interpreted broadly" (id. at 396 n 6). "As such, [the state EAJA] should be liberally construed to carry out the reforms intended and to promote justice, and interpreted broadly to accomplish its goals" (id. at 396 [internal quotation marks, brackets and citations omitted]; contra Matter of Criss v New York State Dept. of Health, 192 AD3d at 1549; Matter of Peck v New York State Div. of Hous. & Community Renewal, 188 AD2d 327, 327 [1st Dept 1992]).[FN6] In light of the state EAJA's remedial purpose, we may not read into it any limitations that are not "clearly expressed" (Kimmel v State of New York, 29 NY3d at 397 [internal quotation marks and citations omitted]).
There is no clearly expressed requirement in the state EAJA that a party "prevails in whole" only if the party obtains complete relief on the merits of the dispositive issues asserted in the litigation (CPLR 8602 [f]). To recognize such a limitation anyway undermines the state EAJA's purpose by discouraging plaintiffs and petitioners with modest finances from challenging final agency determinations so obviously wrong that the State simply declines to defend them in court (see Kimmel v State of New York, 29 NY3d at 396). Although we take no position on whether OTDA's determination here fits that description, the legislative history and statutory purpose clearly indicate that the Legislature wanted to reach parties reluctant to seek judicial review of meritorious claims because the prospect of maintaining a costly action was too daunting. Consistent with this history and purpose, we do not read the statute to require parties to an action against the State who obtain everything in their prayers for relief to have actually endured expensive, years-long litigation to obtain it (cf. Assembly Mem in Support of 2009 NY Assembly Bill 7395). The text of the state EAJA, the legislative record, our collective judicial experience and common sense all lead us to conclude that the Legislature could have rationally determined that parties who receive complete relief from the State after the commencement of litigation have prevailed "in whole" even if the State folds and gives it to them.
Furthermore, when enacting the state EAJA, the Legislature announced that it looked to the federal EAJA's interpretive federal case law "that has evolved" (CPLR 8600). Thus, to the extent federal case law helps us resolve ambiguities in the state EAJA[*7], decisions that the Legislature would have read prior to the state EAJA's enactment are more persuasive than decisions handed down after its enactment (see Albunio v City of New York, 23 NY3d at 73; People v Litto, 8 NY3d at 697; Riley v County of Broome, 95 NY2d at 464). When the state EAJA was enacted in 1989 — just over a decade before Buckhannon was decided — "the catalyst theory was a standard generally accepted by United States [Circuit] Courts . . . in evaluating whether to award counsel fees under the federal EAJA" (Matter of Solla v Berlin, 24 NY3d 1192, 1195 [2015]; see e.g. Vitale v Secretary of Health & Human Servs., 673 F Supp 1171, 1177-1178 [ND NY 1987]; see generally Matter of Solla v Berlin, 106 AD3d at 87). The text of the statute and the weight of the federal case law in 1989 persuade us that, if we had the opportunity to interpret the state EAJA shortly after its enactment, we would have awarded counsel fees based upon the catalyst theory — at least with respect to a party who "prevails in whole" (CPLR 8602 [f]).
Respondent also points out that legislators have unsuccessfully proposed amending the state EAJA to authorize the award of counsel fees based upon the catalyst theory (see e.g. 2013 NY Assembly Bill 2068, 2013 NY Senate Bill 713-A [passed Assembly, died in Senate]; 2011 NY Assembly Bill 3264, 2011 NY Senate Bill 5131 [same]; 2009 NY Assembly Bill 7395, 2009 NY Senate Bill 4534 [same]). We do not find those failed amendments persuasive evidence that the Legislature intended for us to read the state EAJA as requiring every prevailing party to obtain judicially sanctioned relief on the merits, as "[l]egislative inaction, because of its inherent ambiguity, affords the most dubious foundation for drawing positive inferences" (Matter of NYC C.L.A.S.H., Inc. v New York State Off. of Parks, Recreation & Historic Preserv., 27 NY3d 174, 184 [2016] [internal quotation marks and citations omitted]). Indeed, those bills were not introduced to expand the state EAJA's reach but instead to counteract Buckhannon and its progeny, which had "effectively repealed the [state] EAJA" (Assembly Mem in Support of 2009 NY Assembly Bill 7395; accord Assembly Mem in Support of 2013 NY Assembly Bill 2068; Assembly Mem in Support of 2011 NY Assembly Bill 3264). "As a result of this failure to award fees as contemplated by the [state] EAJA, attorneys are increasingly unwilling to take on these matters" (Assembly Mem in Support of 2009 NY Assembly Bill 7395; accord Assembly Mem in Support of 2013 NY Assembly Bill 2068; Assembly Mem in Support of 2011 NY Assembly Bill 3264).
Accordingly, we hold that a party prevails in whole when the party obtains all of the relief sought in a lawsuit against the State — including when that relief is granted voluntarily by the State after the action is commenced — and is thus a prevailing party under the state EAJA as a matter of law (see CPLR 8602 [f]). To the extent Clarke is to the contrary, it should no longer [*8]be followed.
As a consequence of our interpretation of the state EAJA, a plaintiff or petitioner who obtains full relief from the State need not demonstrate that the civil action, in fact, catalyzed the State's complete reversal to be a prevailing party (compare Matter of Solla v Berlin, 24 NY3d at 1195).[FN7] To hold otherwise would be tantamount to requiring a party who "prevails in whole" to prove it would have won on moot "issues" (CPLR 8602 [f]), which limits prevailing-party status in a way not clearly expressed by the statute's text (see Kimmel v State of New York, 29 NY3d at 397), and risks transforming counsel fee motion decisions into advisory opinions addressed to the merits of the underlying challenge. Thus, to "prevail[ ] in whole" under our application of the catalyst theory to the state EAJA, the party must only show that it received from the State all of the relief requested that could have been awarded in a final judgment on the merits or settlement in the party's favor (compare Pastore v Sabol, 230 AD2d 835, 837 [2d Dept 1996]).[FN8]
We recognize that reasons other than the strength of the party's challenge may impel the State to administratively reverse itself in the midst of litigation. The state EAJA's substantial-justification requirement, however, must be assessed on the record before an agency when it issued the challenged determination — and thus before commencement of litigation (see CPLR 8601 [a]).[FN9] Consequently, the reasons for the State's voluntary reversal could factor into a court's equitable calculus in determining whether "special circumstances make an award unjust" (CPLR 8601 [a]; see CPLR 8602 [e]).
Relatedly, although we no longer read the state EAJA to require every prevailing party to obtain judicially sanctioned relief, we do not otherwise address a party "who prevails . . . in substantial part" (CPLR 8602 [f]). Petitioner's case does not require us to resolve whether the catalyst theory applies where a party has substantially, but not wholly, prevailed. We continue to impose an additional requirement on a substantially prevailing party to show a win against the State on the merits of one or more "issues" in litigation, and a corresponding win by the State on the merits of one or more "separate issues" (CPLR 8602 [f]; see generally Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d at 355-356). Therefore, a party claiming to have prevailed in substantial part must still demonstrate that relief was obtained on the merits in an outcome that changes the legal relationship between the party and the State — for example, a judgment on the merits or a settlement agreement (see CPLR 8601 [a]; cf. Matter of Clarke v Annucci, 190 AD3d at 1247).
In this case, petitioner received the reversal of OTDA's denial of rental assistance plus utility arrears that he sought when he commenced this proceeding. He therefore prevailed in whole, making him a prevailing party under the state EAJA (see CPLR 8602 [f]). Since [*9]Supreme Court denied petitioner's motion because he was not a prevailing party under Clarke, the court had no occasion to address the other two requirements for counsel fees — namely, whether the State's position was substantially justified and whether special circumstances make fee recovery unjust (see CPLR 8601 [a]). Further, it is unclear which parts of the appellate record comprise the administrative record that was before OTDA when it issued the challenged determination, preventing us from reaching the substantial-justification prong ourselves (see CPLR 8601 [a]). We therefore remit to Supreme Court to evaluate the remaining two state EAJA requirements and, if warranted, calculate and award counsel fees in accord with the statute.
Lynch, Ceresia, McShan and Powers, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: The state EAJA also restricts eligibility to, as relevant here, "an individual whose net worth, not including the value of a homestead used and occupied as a principal residence, did not exceed fifty thousand dollars at the time the civil action was filed" (CPLR 8602 [d] [i]). There is no contention that petitioner fails this eligibility requirement. 

Footnote 2: For present purposes, our references to complete or full relief, or all of the relief sought or requested, and similar expressions all mean to the maximum relief that the party requested that could be awarded in a judgment on the merits or settlement agreement in the party's favor that disposes of the litigation (see CPLR 8602 [c]). We therefore exclude requests for alternative and temporary relief (cf. Matter of Gonzalez v New York State Dept. of Corr. & Community Supervision, 152 AD3d 680, 683 [2d Dept 2017]).

Footnote 3: The federal EAJA defines the term prevailing party only with respect to eminent domain proceedings, excluding from coverage a party who has obtained a final judgment in such proceedings by settlement (see 28 USC § 2412 [d] [2] [H]).

Footnote 4: The First Department credited another definition of prevail: " 'to be or become effective or effectual' " (Matter of Solla v Berlin, 106 AD3d at 88, quoting Merriam-Webster's Collegiate Dictionary [11th ed 2004]; accord Webster's Ninth New Collegiate Dictionary 932, prevail [second definition]).

Footnote 5: Adding to the confusion, the state EAJA also directs courts to award counsel fees using "prevailing market rates" (CPLR 8601 [a] [emphasis added]), meaning "predominant" or "most frequent" (Webster's Ninth New Collegiate Dictionary 932, prevail [third definition], prevailing [second definition]).

Footnote 6: The Court of Appeals also identified the federal EAJA as a remedial statute (see Kimmel v State of New York, 29 NY3d at 396). Yet, while Kimmel instructs courts to liberally construe the state EAJA, Buckhannon instructs courts to narrowly construe fee-shifting statutes because they are in derogation of the so-called "American Rule . . . of not awarding fees to a prevailing party absent explicit statutory authority" (Buckhannon Board & Care Home, Inc. v West Virginia Dept. of Health and Human Resources, 532 US at 602 [internal quotation marks and citation omitted]). Kimmel stands in stark contrast to Kaladjian, where the Court of Appeals determined that the Legislature's departure from the federal EAJA — in particular, the definition of "prevailing party" in the state EAJA — "was intended to limit the State's liability for fee awards" (Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d at 355; see Kimmel v State of New York, 29 NY3d 386, 411 [2017, Garcia, J., dissenting]). Kaladjian, however, was addressed to a party "who prevails . . . in substantial part" (CPLR 8602 [f]), which language the Court of Appeals determined to be more restrictive than the award of counsel fees under the federal EAJA to a party "who has succeeded on merely 'any significant issue' in the litigation which achieved only 'some of the benefit' sought in bringing the lawsuit" Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d at 355, quoting Hensley v Eckerhart, 461 US at 433).

Footnote 7: In reversing the First Department's award of state EAJA counsel fees in Solla, the Court of Appeals assumed, without deciding, that "the catalyst theory applies to the definition of a 'prevailing party' for the purpose of CPLR 8601" (Matter of Solla v Berlin, 24 NY3d at 1195). Accordingly, the Court of Appeals, in dicta, observed, "Under the pre-Buckhannon federal precedent that petitioner [Solla] would have us apply, a fee claimant recovers [counsel] fees only if his or her lawsuit prompted a change in position by the party from which claimant seeks reimbursement. The party from which plaintiffs [or petitioners] seek their fees and costs must be prompted into action in order for fees to be recoverable" (id. [internal quotation marks and citations omitted]). Applying — but not adopting — the catalyst theory as set out in federal case law, the sole basis for the Court's reversal was its finding that the petitioner's lawsuit did not catalyze the State to voluntarily change its position (see id. at 1195-1196). We too do not adopt the federal case law's articulation of the catalyst theory based upon our analysis of how the language, history and purpose of the state EAJA express the Legislature's intent, resorting to pre-Buckhannon federal case law to guide — not control — our interpretation of the statute (see Albunio v City of New York, 23 NY3d at 73).

Footnote 8: The Second Department in Pastore v Sabol (230 AD2d at 837) denied without explanation the party's motion for counsel fees in a combined CPLR article 78 proceeding and declaratory judgment action where, after litigation had commenced, an agency voluntarily reversed an administrative determination withholding benefits, and the trial court erred in awarding to the party a declaration that the agency's interpretation of the relevant statute was incorrect. The State's reversal of the administrative determination rendered the party's declaratory judgment claim academic even though the State did not voluntarily grant such relief (see id.; see generally CPLR 3001).

Footnote 9: Regardless of whether our interpretation of "prevails in whole" (CPLR 8602 [f]) increases the number of prevailing parties moving for state EAJA counsel fees, a motion may still be denied if it fails either of the remaining substantial-justification and special-circumstances requirements (see CPLR 8601 [a]). Indeed, even a party who wins an action in a judgment on the merits and obtains complete relief may still be denied counsel fee recovery where the agency's determination, though incorrect, is found to have been substantially justified (see e.g. Matter of Sutherland v Glennon, 256 AD2d 984, 985 [3d Dept 1998]; Matter of Rivers v Corron, 222 AD2d 863, 864-865 [3d Dept 1995]; Matter of Scibilia v Regan, 199 AD2d 736, 737 [3d Dept 1993]).